# ESTATE OF HUGH GAFFNEY, DECEASED.

APPEAL BY R. P. CAUFFIELD, ADMR. OF POLLY McKIM, FROM
THE ORPHANS' COURT OF CAMBRIA COUNTY.

Argued October 12, 1891—Decided January 4, 1892.
[To be reported.]

1. A decedent in his lifetime made a bank deposit to the credit of himself
as " trustee for Polly McKim ; " and at the time of his death the deposit
so stood, both upon his pass book and upon the books of the bank.
Prima facie, Polly McKim was entitled to the fund, though the pass
book might not have been delivered to her : Smith's Est., 144 Pa. 428.
2. The bank having paid the money to the decedent's executor, who ac-
counted for it in his settlement, the beneficiary was entitled to recover
the fund on presenting a claim therefor on distribution in the Orphans'
Court ; such claim being the equivalent of an action against the execu-
tor for money had and received.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WIL-
LIAMS, McCOLLUM and MITCHELL, JJ.

No. 237 October Term 1891, Sup. Ct. ; court below, No. 5
June Term 1890, O. C.

On December 2, 1889, John C. Carroll, executor of the will
of Hugh Gaffney, deceased, having filed his first and final ac-
count, and the same having been confirmed, *Mr. M. B. Stevens*,
was appointed auditor to distribute the balance in the hands of
the accountant.

On April 15, 1890, the auditor filed his report, finding that
Hugh Gaffney died on August 21, 1888, and that from 1881
to the time of his death he made his home as a boarder with
Polly McKim, a widow ; that, until about January 1, 1888,
when he became seriously ill, he paid his board at the rate of
seventeen dollars per week ; that after that date Mrs. McKim
had " to nurse him and care for him as a child," as he suffered
from paralysis, was almost blind, and became deranged, but
no agreement was made allowing her a larger rate for her ser-
vices ; that, by his will dated January 7, 1884, duly admitted
to probate, among other bequests the decedent gave a legacy
of one hundred dollars to Mrs. McKim ; that at the time of

his death he had two deposits with the Johnstown Savings Bank, one of two thousand dollars in his own name, and one of five hundred sixty dollars in the name of "Hugh Gaffney, trustee for Polly McKim;" that after his death Mrs. McKim presented to his executors a bill for eight hundred dollars for boarding, nursing and caring for him, which was refused, but they paid her two hundred dollars, claiming that this was all she was entitled to; that Mrs. McKim lost her life in the Johnstown flood of May 31, 1889, and letters of administration on her estate were granted to her nephew, R. P. Cauffield, who presented a claim before the auditor for six hundred dollars, balance for the boarding, nursing, etc., of the decedent, and for five hundred sixty dollars "as cash given her and deposited in the Johnstown Savings Bank by Hugh Gaffney." Upon these findings, the auditor reported as follows:

And, as a conclusion of law, the auditor cannot at this time make or change a contract made and mutually understood between the parties, under which they had been working for seven or eight years. Polly McKim had her remedy, had she so desired, but she continued to perform her duties, even though they were greater than she anticipated at the time of hiring, without making a demand for extra compensation until after Hugh Gaffney's death. Nothing is to be learned as to how much money Polly received from Hugh Gaffney, except that he paid her at his usual rates until the first of January, 1888; and, assuming that Hugh Gaffney did not pay Polly after January 1st, she continued at the usual employment, boarding, and caring for him as she had done before, till his death, August 21, 1888. Hence she cannot recover upon the quantum meruit, as claimed by her administrator. . . . .

And, as to the claim of the sum of money in the Johnstown Savings Bank, the auditor finds that that money, while deposited as "Hugh Gaffney, trustee," is funds of the estate of Hugh Gaffney, and has been paid over to that estate; there being no evidence showing a donation of that money to Polly McKim, and, as a matter of law, if the money belongs to Polly McKim, the Johnstown Savings Bank is the responsible party to the administrator of Polly McKim. . . . .

—The testimony relating to the saving-bank deposit, as returned by the auditor with his report, was in substance as follows:

Mary Kinney testified for the claimant that the decedent told the witness, in his lifetime, that " he had been to town and put money in the bank for Aunty McKim," but did not mention the amount of the deposit; that, on the day of the decedent's funeral, the witness was present, when Mrs McKim delivered to Father Mollyneaux his papers, will, etc.; and the witness then told Mrs. McKim " not to give up that bank book, as that money was hers." William Adams testified for the claimant that Mrs McKim had in her possession, after the testator's death, the deposit book showing the account with the Johnstown Savings Bank in the name of Hugh Gaffney, trustee for Polly McKim; that, in the presence of the witness, her counsel instructed her " to keep the book, as it was hers," but afterwards the counsel of the executor demanded it of her, and on her refusal to give it up, told her that he would send the sheriff and get the book; that she began to cry and said she did not want to get into trouble, and finally gave the book up. On cross-examination, the witness said : " I believe the money to be Mr. Gaffney's, and that he had more money in the bank than he could put in, and that it was deposited as trustee, so the bank would take it; I understood that Gaffney put the money in the bank in Polly's name, and I believe that it was donated to her, from the way it reads on the book."

George A. Hager, assistant treasurer of the Johnstown Savings Bank, testified that " Hugh Gaffney deposited money in the Johnstown Savings Bank for Polly McKim," in his name as trustee for her. This witness produced the books of the bank showing the deposit, and stated further that " according to the rules of our bank, this money would be paid to Polly McKim, in case of the death of Hugh Gaffney; he controls during his life; " but that the deposit, amounting with interest to $660, was drawn out by one of the executor's attorneys. On behalf of the executor, one of his attorneys testified that Mrs. McKim's refusal to give up the bank book was based, according to her statement at the time, upon the advice of some of her friends to the effect that she could retain the book until her bill for keeping and taking care of the decedent was paid; that she admitted that the money was not hers but his, and explained that the money was deposited in his name, as trustee for her, for the reason that the bank would receive but two thousand dollars

Arguments.

from one depositor, and the decedent had already deposited
that amount in his own name; that Mrs. McKim surrendered
the book, after being told by the witness that she would have
to do so and could see about her bill later on, and that if it
was not delivered up legal proceedings would be commenced to
recover it.

The auditor's report having been confirmed absolutely, the
confirmation was subsequently lifted, and, with leave of the
court, the claimant filed exceptions to the disallowance of his
claims by the auditor. On September 12, 1890, the excep-
tions were dismissed and the report confirmed; whereupon the
claimant took this appeal, specifying that the court erred "in
confirming the auditor's report."

*Mr. H. W. Storey*, for the appellant:

There is no dispute that, after January 1, 1888, the services
rendered by Mrs. McKim to the decedent were vastly more
onerous than they had been before. How could she have
made a new contract with an insane man? The principle
stated in Ranck v. Albright, 36 Pa. 367, upon which the audi-
tor rested his opinion, has no application, as in that case both
parties were sane and able to take care of themselves. The
savings bank fund was a gift to her. She claimed it as such,
and held the bank book until it was extorted from her.

*Mr. Francis J. O'Connor*, for the appellee.

No evidence of a change in the contract to pay seventeen
dollars per month, having been produced, the auditor was war-
ranted in finding that it was not changed: Ranck v. Albright,
36 Pa. 367. The theory of appellant that it would have been
changed but for Hugh Gaffney's condition, is not well found-
ed. He was deranged only a portion of the time after he be-
came sick. If she rendered extra services in expectation
of a greater legacy, she cannot recover because disappointed:
Thompson v. Stevens, 71 Pa. 161. Appellant does not state
how the fund deposited in the savings bank is claimed, whether
by a gift inter vivos or as a donatio mortis causa. There is
nothing to show a gift in the decedent's lifetime, as there is
no claim that it was ever delivered. The testimony, moreover,
shows that Mrs. McKim did not claim ownership of the money,

but was retaining possession of the book money to compel the executor to pay her bill against the estate.

OPINION, MR. CHIEF JUSTICE PAXSON:

The only assignment of error is that the court below erred in confirming the report of the auditor. This general specification gives us no information, and does not conform to the Rules of Court. We might well affirm the decree for this reason, but this would do injustice, and we will not punish the appellant for the neglect of her counsel.

We learn from the record that one of the exceptions to the report of the auditor was "that the auditor erred in disallowing the claim of five hundred sixty dollars, which was deposited in trust for said Polly McKim by said Hugh Gaffney." The auditor dismisses this claim in the following summary manner:

"And, as to the claim to the sum of money in the Johnstown Savings Bank, the auditor finds that that money, while deposited as "Hugh Gaffney, trustee," is funds of the estate of Hugh Gaffney, and has been paid over to that estate; there being no evidence showing a donation of that money to Polly McKim, and, as matter of law, if the money belongs to Polly McKim, the Johnstown Savings Bank is the responsible party to the administrator of Polly McKim."

It does not follow that because the bank may have made a mistake and paid the money to the wrong person, the appellant is to be turned out of court. The law avoids circuity of action. The money is now in the hands of the executor of Hugh Gaffney; and if it really belongs to the estate of Polly McKim, no good reason is apparent why she should proceed against the bank, and compel it to pay the money the second time. An action for money had and received would lie against the Gaffney estate, and, if such action would lie, it may be recovered in this proceeding in the Orphans' Court.

We think the auditor was clearly in error in finding that the money belongs to the estate of Hugh Gaffney. Granted there was no direct evidence of a gift, there is evidence of a trust. This appears upon the face of the bank book, as well as upon the books of the bank. It was contended that Mr. Gaffney never intended the money should go to Mrs. McKim; that his

only object in depositing the money in her name, or in trust for her, was to increase his deposit in bank over the limit of two thousand dollars. But of this there was not a word of reliable testimony, and we think the case is ruled by Smith's Est., 144 Pa. 428, decided at the present term. · In that case, the testator had purchased certain railroad bonds, and placed them in an envelope, on which he had signed a declaration that he held them for his nephew. The bonds remained in his possession until after his death, with this indorsement upon the envelope, and we held under all the facts that the nephew was entitled to them. In the case in hand, Hugh Gaffney made this deposit in his name as trustee for Polly McKim, and the deposit so stood at the time of his death. An argument was based upon the allegation that he had never delivered the deposit book to Polly McKim. This, however, was not necessary, as it would have been in the case of a gift inter sese. The book was found in her possession after Gaffney's death, and, the executor of Gaffney insisting upon its surrender, it was given up; and there is evidence that she surrendered it only when threatened with legal proceedings, and a visit from the sheriff.

We have, then, the case of a deposit on the books of the bank of a sum of money in the name of Hugh Gaffney, trustee for Polly McKim. This makes out at least a prima-facie case for the appellant. Upon the face of the bank book, the money belonged to Polly McKim, and there is not sufficient upon the record to rebut this presumption. This money should have been awarded to the appellant.

The claim of six hundred dollars for the care, support, and maintenance of Hugh Gaffney from January 1, 1888, to August 21, 1888, is not sustained. The auditor found that for these services Polly McKim had been paid in full, and we have no reason to doubt the correctness of his finding.

> The decree is reversed as to the claim of five hundred sixty dollars, and it is ordered that the executor of Hugh Gaffney pay the said amount to the appellant; in all other respects the decree is affirmed, the costs to be paid by appellee.