## Brose Estate.

Argued September 29, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROB-ERTS, JJ.

reargument re-fused January 27, 1965.

388

*George R. Craig,* for widow.

*Martin E. Geary,* for executor.

OPINION BY MR. CHIEF JUSTICE BELL, January 6, 1965:

Both parties to a contest in the Orphans' Court have appealed from its final Decree which dismissed their respective exceptions to an adjudication. The Orphans' Court decreed (1) that ten entireties accounts should be divided equally between decedent's wife and decedent's executor, and (2) that decedent's wife was entitled solely and absolutely to an alleged tentative trust savings account.

From the facts, most of which were stipulated and others appear in the record, we make the following summary.

Nicholas Brose,* a physician, died testate July 10, 1963, in Allegheny County. On June 27, 1944, he had married a nurse an anaesthetist named Irma E. Brose.** During their married life together and until May 7, 1963, both continued to practice their respective professions. Money derived from *their joint earnings* was deposited in ten savings accounts and in one checking account in eight different banks and in one savings and loan association.

---

* hereinafter referred to as "Nicholas."

** hereinafter referred to as "Irma."

## "Entireties" Accounts

The parties stipulated that 10 of the aforesaid 11 accounts were "entireties" accounts and totaled $131,-621.10.* More accurately, each account was evidenced by an executed contract of deposit. Some of the contracts are well drawn and are entitled "Nicholas or Irma," or "Nicholas and Irma," thus clearly creating a tenancy by the entireties. On the other hand, some of the contracts are inartistically drawn and do not accurately reflect the husband-wife relationship. Some of these list the names of "Nicholas" and "Irma" but do not connect them either with a conjunction or a disjunction; others denominate the relationship as a "joint tenancy"; and yet another merely says, "Payable to either or to the survivor."

Moreover, most of the contracts recite, "All deposits made therein shall be owned by us as tenants by the entireties with the right of survivorship. . . ." Several others were opened as "A joint account of husband and wife," and were made "payable to either of us or the survivor."

Despite these actual and technical differences, each of the bank accounts and each of the ten contracts above mentioned clearly created (as we shall see) a tenancy by the entireties.

What followed the opening of the aforesaid accounts was very unusual. On May 7, 1963, Irma left the common domicile (concealing her whereabouts from Nicholas) and withdrew $33,000 from their $38,-387.05 checking account at the Mellon National Bank and Trust Company. This was withdrawn without Nicholas's knowledge or consent. When Nicholas discovered this, he withdrew, without Irma's knowledge

---

* The figures submitted by the parties were slightly changed by the Court.

or consent, the entire balance in three other accounts, and almost all of the balance of the checking account in the Mellon Bank. Irma then withdrew 75 percent of one "entireties" account, all of two more "entireties" accounts, as well as the entire balance of another account held by "Irma *in trust* for Nicholas."

Each withdrawal was appropriated to the withdrawer's exclusive use; after Irma's first withdrawal, each was made with the knowledge by the other spouse of preceding withdrawals but without the consent of the other spouse. Subsequent to Nicholas's death,[*] Irma withdrew all of the remaining balances in the entireties accounts, except the balance in a savings account in the Mellon Bank which had been claimed by the executor and was therefore withheld by that bank[**] pending Judicial determination.

A deposit in a banking account or in a checking account or in a savings account,[***] which is opened or registered in the name of a husband and wife, or of a husband or wife, or of two persons who are husband and wife although not so denominated, creates a tenancy by the entireties, irrespective of whether the money deposited is payable to husband *and* wife or to husband *or* wife, or is denominated a joint account or a joint tenancy. *Stemniski v. Stemniski,* 403 Pa. 38, 41, 169 A. 2d 51; *Alcorn v. Alcorn,* 364 Pa. 375, 378-379, 72 A. 2d 96; *Madden v. Gosztonyi Savings and Trust Co.,* 331 Pa. 476, 200 A. 624; *Wilbur Trust Co. v. Knadler,* 322 Pa. 17, 21, 185 A. 319; *Berhalter v.*

---

[*] Irma had instituted divorce proceedings the day before Nicholas's death.

[**] After learning of Irma's first withdrawal from the checking account, Nicholas had amended this savings account deposit contract to read: "Two Signatures Required."

[***] or real estate which is recorded, or a bond or stock certificate which is registered in the name of two persons who are husband and wife.

*Berhalter,* 315 Pa. 225, 227, 173 A. 172. Cf. also, *Pregrad v. Pregrad,* 367 Pa. 177, 179, 80 A. 2d 58.

Moreover, the law is well settled that an estate by the entireties cannot be terminated at the option of one of the co-tenants but can always be terminated or destroyed by mutual agreement: *Reifschneider v. Reifschneider,* 413 Pa. 342, 344, 196 A. 2d 324; *Stemniski v. Stemniski,* 403 Pa., supra; *Interboro Bank and Trust Co. Appeal,* 359 Pa. 315, 318, 59 A. 2d 101.

Withdrawing by one tenant and appropriating the money or property to the withdrawer's own exclusive use without the consent or subsequent approval of the other tenant, terminates the tenancy at the option of the co-tenant, but not the co-tenant's right to an accounting and to one-half thereof.

In *Berhalter v. Berhalter,* 315 Pa., supra, the Court aptly said (pages 227-228) : ". . . Even though there had been no such agreement [expressly creating an estate by the entireties], a deposit of money *in the names of husband and wife, or, of husband or wife, using both names, creates an estate by entireties :** Sloan's Est., 254 Pa. 346; Blick v. Cockins, 252 Pa. 56; Klenke's Est., No. 1, 210 Pa. 572 . . . *with the right of survivorship.* At common law, the heirs of the survivor take to the exclusion of the heirs of the first deceased. The theory of joint estates of this character is that *each of the tenants holds the entire estate by the half and by the whole.* On the death of one, the other does not acquire a new interest by descent. The interest of the surviving tenant in the whole is not increased by the extinguishment of the interest of the other by death, but rather is freed of the restraints imposed upon it by the presence of an interest of like degree and kind which existed while both lived : Cf. Haggerty's Est., 311 Pa. 503. The whole estate

---

* Italics throughout, ours.

continues in the survivor as it would continue in a corporation after the death of one of the corporators. One of the parties cannot destroy the incidents of the entirety by any act of his or hers: Beihl v. Martin, 236 Pa. 519. It is the contention of appellant that when the parties expressed in the agreement that 'either of them' could withdraw all or any part of the fund, one of the elements essential to an estate by entirety was lacking, . . . *The fund withdrawn is still subject to the legal status of the estate, and it has stamped on it in the hands of the one who withdrew it all the elements of a trust.* Where both husband and wife have the power to withdraw funds deposited in a joint account, the power must be exercised in good faith for the mutual benefit of both, and cannot be rightly exercised by the fraudulent withdrawal of the corpus of the funds for the exclusive use of one for the purpose of depriving the other of any use thereof or title thereto. We have held that the fact an agreement creating an estate by entirety contains the right to withdraw by either husband or wife, does not destroy the legal effect of the estate. 'It is a joint deposit with right of survivorship where the certificates are payable to husband *or* wife, as well as where payable to husband *and* wife. In either case it is held by entireties': Sloan's Est., Blick v. Cockins, Klenke's Est., all supra."

In *Stemniski v. Stemniski,* 403 Pa., supra, the Court, quoting from *Berhalter v. Berhalter,* 315 Pa. 225, 173 A. 172, said (page 42): " 'When the wife attempted to withdraw more than one-half of this fund [deposited in a joint account], *or any of it,** from the bank and use it for her individual purposes, she violated the terms of the entirety agreement.' "

"Furthermore, all property of the parties held by the entireties is affected, not merely the unit that

---

* Italics in this instance are in the *Stemniski* Opinion. ·

has been improperly drawn upon. In Watkins there were four bank accounts, and the [lower] Court, we affirming, ordered all four divided, although funds from only two had been diverted by the defendant husband. The Court said: 'Therefore, it would be inconsistent with the policy of the Berhalter case to require plaintiff to wait until funds also are diverted from the two hitherto unwithdrawn accounts before suing to protect her interest in them.' "

While the prior decisions of this Court do not establish exactly what acts or actions are necessary to evidence a mutual agreement to terminate an estate by the entireties, it is clear that the actions of Irma and Nicholas evidenced a mutual intent to terminate not only the accounts from which each withdrew and appropriated the money therein to her or his own exclusive use, but likewise *all* of the entireties accounts: *Stemniski v. Stemniski,* 403 Pa., supra; *Watkins v. Watkins,* 393 Pa. 284, 286-287, 142 A. 2d 6. Cf. also, *Alcorn v. Alcorn,* 364 Pa., supra.

The Orphans' Court therefore properly concluded and decreed (1) that each spouse was entitled to one-half of all the amounts on deposit in the entireties accounts on May 7, 1963; (2) that the amount on deposit in the savings account in the Mellon National Bank and Trust Company totaling $11,627.99 (against which the equivalent of a stop order had been entered) should be paid to Nicholas's executor, and (3) that Irma must pay to Nicholas's executor the sum of $14,-627.99, the amount by which her withdrawals exceeded her one-half share of the $131,621.10 which was on deposit in the aforesaid entireties accounts on May 7, 1963.

### The "In Trust" Account

An account was opened in the Dollar Savings Bank on November 28, 1960, in the name of *Irma in*

*trust for Nicholas.* The facts relative to this account are meager. The auditing Judge made no findings or conclusion with reference to this account in his adjudication. However, he subsequently filed an amended decree in which, without finding or reciting *any facts,* he ordered and decreed that this trust account "was the sole and separate property of Irma E. Brose and she is not required to account for the funds withdrawn by her from this account nor to divide them with [Nicholas's] executor." Subsequently, the auditing Judge filed a supplemental opinion in which he said, "The record also indicates that there was a savings account in the Dollar Savings Bank at the date of Nicholas A. Brose's death in the name of Irma E. Brose *in trust* for Nicholas A. Brose, in the amount of $11,226.98. These are funds that clearly belong to Irma E. Brose as the settlor of the said tentative trust, the beneficiary having predeceased her." This conclusion was reached by assuming that this was a tentative trust.

If this trust account had been opened *with Irma's money*—an absolutely essential requisite for a Totten tentative trust—the Orphans' Court was correct in concluding that it was a tentative and hence a revocable trust, and upon the death of either, belonged to the survivor. However, the parties agreed that the funds contained in this trust account in the Dollar Savings Bank "*were* [derived] *from the joint earnings* of the respective parties." The question arises: Was this evidence sufficient to create a tentative Totten trust which, under the authorities, is presumed to be a revocable trust?

Where property of any kind (with exceptions hereinafter discussed) is placed in the name of the donor or settlor *in trust for a named beneficiary,* unless a power of revocation is expressly or impliedly reserved, the *general principle* of law is well settled that such facts create a trust which is prima facie *irrevocable.*

*Ingels Estate,* 372 Pa. 171, 92 A. 2d 881; *Fishblate v. Fishblate,* 238 Pa. 450, 457, 86 A. 469; *Rambo v. Pile,* 220 Pa. 235, 69 A. 807; *Merigan v. McGonigle,* 205 Pa. 321, 54 A. 994; *Gaffney's Estate,* 146 Pa. 49, 23 A. 163; Scott on Trusts, 2d Ed., Vol. III, Sec. 329A, page 2391, Sec. 330, page 2393. Moreover, the authorities are in accord that the actual intention of the donor or settlor is so uncertain, that it may be shown by parol evidence. *Furjanick Estate,* 375 Pa. 484, 100 A. 2d 85; *Ingles Estate,* 372 Pa., supra; *Rodgers Esstate,* 374 Pa. 246, 97 A. 2d 789; *Scanlon's Estate,* 313 Pa. 424, 169 A. 106.

However, an exception* to the general principle was engrafted onto and was incorporated in the law of Pennsylvania with respect to a deposit in a savings account by one person *of his own money* in his own name as trustee for another. *Scanlon's Estate,* 313 Pa., supra, which adopted the New York rule laid down in *Matter of Totten,* 179 N.Y. 112, is the leading case. The law is well summarized in the syllabus in *Rodgers Estate,* 374 Pa., supra, which reads:

"1. A [savings] bank deposit by one person of *his own money,* in his own name, as trustee for another, standing alone, creates merely a tentative trust, revocable at will, until the depositor dies or completes the gift in his lifetime.

"2. A tentative trust may be revoked, among other means, by (1) oral declarations of the depositor, and

---

* limited first to a savings account, and subsequently also to a share in a savings and loan association. *Ingels Estate,* 372 Pa., supra; *Chadrow v. Kellman,* 378 Pa. 237, 244, 106 A. 2d 594; *Vierling Admrx. v. Ellwood City Fed. S. & L. Ass'n,* 356 Pa. 350, 52 A. 2d 224. The writer of this Opinion still cannot see any reason or justification for this exception, but it is the law of Pennsylvania. See my Dissenting Opinion in *Ingels Estate,* 372 Pa., supra, page 182.

(2) facts and circumstances resulting in inadequacy of the estate assets to satisfy the testamentary gifts, funeral and administration expenses, taxes and other charges.

"3. Restatement, Trusts, §58, cited.

"4. It was *Held* that the testimony of the scrivener of decedent's will as to his conversations with the testatrix leading to the preparation of her will was admissible to show her intention that the tentative trust be revoked.

"5. It was *Held* that the circumstantial evidence was insufficient to establish that settlor intended to make the tentative trust irrevocable."

However, the tentative trust doctrine has never been extended to any property other than a savings account (or savings share account in a building and loan association) where the *donor with his own money opened such an account in his own name in trust for the donee: Ingels Estate,* 372 Pa., supra, page 177, and the many cases therein cited; *Chadrow v. Kellman,* 378 Pa., supra, page 244; *Vierling v. Ellwood City Fed. S. & L. Ass'n,* 356 Pa., supra, page 354.

In *Ingels Estate,* 372 Pa., supra, the Court said (pp. 176-177): "The presumption that a revocable trust is intended by such a deposit *is an exception to the general rule that trusts are irrevocable* unless a power of revocation is expressly [or impliedly] reserved: Scott on Trusts (1939), secs. 329A, 330.2; Kraft v. Neuffer, 202 Pa. 558, 561, 52 A. 100; Fishblate v. Fishblate, 238 Pa. 450, 458, 86 A. 469. . . . Because the exception depends on the peculiar circumstances of this type of transaction, *we have never extended the doctrine of tentative trusts to any property other than a savings account.* See: Tunnell's Estate, 325 Pa. 554, 560, 190 A. 906; Brown v. Monaca Federal Savings and Loan Association, 352 Pa. 1, 42

A. 2d 50; Scott on Trusts (1939) sec. 58.3: 'It is clear that a similar trust of property other than savings bank deposits would be invalid.' "

If such a tentative trust account was created by Irma, Nicholas's executor would have to produce clear and convincing evidence that Irma intended to make the tentative trust irrevocable. *Ingels Estate*, 372 Pa., supra.

However, on the present record it would appear that *Irma's trust for Nicholas* was not a tentative or revocable trust since it was created from the *joint earnings* of Irma and Nicholas and not with Irma's own money. If this is correct, it could not be a tentative trust, as the Orphans' Court erroneously assumed it to be. Since parol evidence is admissible to prove the intention of the parties with respect to this account and whether a revocable or irrevocable trust was intended to be created, it is only fair and equitable to remand the record to the Orphans' Court for a further hearing and subsequent determination of this issue in the light of this Opinion.

Decree as modified affirmed, record remanded with directions, each party to pay own costs.