## Stibbe v. Doukas

*Krawitz & Sigal,* for plaintiffs.

*Robert J. Kayton* and *Stephen A. Teller,* for defendant.

DAVIS, P. J., June 21, 1967.—Andrew Doukas has filed a petition under the Deficiency Judgments Act of July 16, 1941, P. L. 400, 12 PS §2621.1, et seq., requesting that the prothonotary be directed to mark the judgment in this case satisfied. The judgment was entered on March 23, 1965, in the sum of $230,462.90, upon affidavit of default in the payment of a bond, dated October 20, 1964, given by Andrew Doukas and Perdou, Inc., defendants, to Jan P. M. Stibbe and Kathryn Stibbe, his wife, plaintiffs, which accompanied a mortgage given by Perdou, Inc., to plaintiffs upon a parcel of land, situate in Palmyra Township, Pike County, Pa., and owned by Perdou, Inc. Plaintiffs issued execution and caused the said land to be exposed to public sale by the sheriff on June 12, 1965. In support of the prayer for relief, petitioner avers:

"4. That plaintiff, Kathryn Stibbe, purchased the said property at said sale for the sum of One Thousand ($1,000.00) Dollars.

"5. That more than six months have elapsed since said sale, but plaintiffs have not filed a Petition to fix the fair market value of the said property".

Plaintiffs admit the averments of paragraph 5, but, as to paragraph 4, their answer reads:

"4. That the facts set forth in Paragraph 4 of the Petition are denied and for further answer the Plaintiffs allege that Kathryn Stibbe, as a Femme Sole Trader, purchased the property for the sum of One Thousand ($1,000.00) Dollars and that the said Kath-

ryn Stibbe, as a Femme Sole Trader, is not one of the party plaintiffs to the within execution sale".

In addition, the answer sets forth under "New Matter" averments which may be paraphrased: (1) Petitioner is a guarantor, not a principal debtor, and, therefore, is not entitled to the protection of the Deficiency Judgments Act; (2) Kathryn Stibbe purchased the land, not as the wife of Jan P. M. Stibbe, co-plaintiff, but as femme sole trader; (3) petitioner is chargeable with laches; (4) the Deficiency Judgments Act is unconstitutional.

Petitioner's reply to the new matter does not specifically deny no. 2, but does deny the laches charged in no. 3, and avers that petitioner filed this petition immediately after plaintiffs had brought an action in the State of New York to collect the alleged deficiency judgment. The parties have chosen not to present testimony on the issues, and disposition of the petition will necessarily rest upon the facts developed by the pleadings.

Plaintiffs' allegations nos. 1 and 4 are clearly without merit. Section 7.1, added by the Act of May 27, 1943, P. L. 681, 12 PS §2621.7a, specifically includes guarantors among the parties authorized to petition for relief under the Deficiency Judgments Act. The constitutionality of the act has been declared by the Supreme Court in Pennsylvania Company v. Scott, 346 Pa. 13, 29 A. 2d .328 (1942), and Fidelity-Philadelphia Trust Company v. Allen, 343 Pa. 428, 22 A. 2d 896 (1941). Neither are we impressed with the allegation of laches. The execution sale took place on June 12, 1965, and the petition was filed on December 12, 1966, immediately after plaintiffs brought action in the State of New York to collect the alleged deficiency judgment.

This case poses the interesting question whether or

not the application of the Deficiency Judgments Act breaks down in the situation where the judgment is owned by multiple plaintiffs and only one of them, bidding successfully at the execution sale, receives a sheriff's deed conveying title to that plaintiff as a separate individual. The fundamental purpose of the act was to bring the principle of quid pro quo into operation between judgment plaintiff and judgment debtor. The allowance to the latter of credit for the fair market value of the property sold was to be counterbalanced and justified by the acquisition, on the part of the judgment plaintiff, of real property having substantial value. If, in this special situation, the non-purchasing plaintiffs should receive absolutely nothing of value from the sale, the equitable application of the act might be seriously impaired.

The act applies as well to the case of multiple execution plaintiffs as to that of a single execution plaintiff. Without undertaking to spell out in specific detail what legal relationships must exist between multiple plaintiffs before the act becomes operative in a particular case, it provides in general terms that the duty to petition for the fixing of the fair market value is imposed upon plaintiffs only where the real estate is sold, *directly or indirectly*, to the plaintiff in execution. Section 1 of the act, 12 PS §2621.1, provides:

"Whenever any real property has heretofore been or is hereafter sold, directly or indirectly, to the plaintiff in execution proceedings and the price for which such property has been sold was or is not sufficient to satisfy the amount of the judgment, interest and costs and the plaintiff seeks to collect the balance due on said judgment, interest and costs, the plaintiff or plaintiffs shall petition the court having jurisdiction to fix the fair market value of the property sold as

aforesaid. Said petition shall be signed and sworn to by the plaintiff or plaintiffs".

Section 7.1 of the act, added by the Act of May 27, 1943, P. L. 681, 12 PS §2621.7a, pursuant to which the instant petition has been filed, provides:

"If the plaintiff or plaintiffs shall fail to present such petition to fix the fair market value of the real property sold within six months after the sale of such property as provided by this act, the debtor, obligor, guarantor or any other person liable directly or indirectly to the plaintiff or plaintiffs for the payment of the debt, or any person or persons interested in any real estate which would, except for the provisions of this act, be bound by said judgment, may present his or their petition to the court having jurisdiction, setting forth the fact of said sale, and that no petition has been filed within six months after said sale to fix the fair market value of the property sold, whereupon the court, upon proof of service of at least ten days' notice of said petition on the plaintiff or plaintiffs, or their attorney in said action, and being satisfied of such facts, shall direct the prothonotary to mark said judgment satisfied, released and discharged".

Counsel for plaintiffs assert broadly that the act required neither of them to petition for a determination of the fair market value because the sale was not made, directly or indirectly, to *either* plaintiff. In support, they advance three propositions: (1) That the record fails to show that the Kathryn Stibbe who purchased the property at sheriff's sale is the same person as the Kathryn Stibbe who is co-plaintiff in the judgment with Jan P. M. Stibbe; (2) that Kathryn Stibbe purchased the property as "Femme Sole Trader"; and (3) that Jan P. M. Stibbe and Kathryn Stibbe, owners of the judgment as tenants by the entireties, constituted an entity and, since the

sale was not made to the entity as such, the Deficiency Judgments Act does not apply.

The first proposition is clearly erroneous. Paragraph 4 of the petition avers "That plaintiff, Kathryn Stibbe, purchased the said property at said sale for the sum of One Thousand ($1,000.00) Dollars". The truth of this averment is admitted, since the corresponding paragraph of plaintiffs' answer fails to deny it specifically: Pa. R. C. P. 1029(b). Instead, it introduces the new allegation, that Kathryn Stibbe purchased the land as "Femme Sole Trader", which is carried forward under "New Matter", paragraph 2: "That Andrew Doukas is not entitled to the protection of the Deficiency Judgments Act because the purchaser at the execution sale was Katherine Stibbe, a Femme Sole Trader. Whereas the said mortgage obligation was owned by Jan P. M. Stibbe and Kathryn Stibbe, husband and wife, as Tenants by Entireties, and therefore the purchaser at the Sheriff's Sale was an individual defendant and separate from the execution plaintiffs". In effect, this is a plea in confession and avoidance: Saxe v. Feinstein, 366 Pa. 473, 77 A. 2d 419 (1951); Wilson & Gardner Co. v. Wilson, 334 Pa. 289, 5 A. 2d 575 (1939). Based on the record and the pleadings, two conclusions are inescapable: (1) Kathryn Stibbe, the judgment plaintiff, and Kathryn Stibbe, the purchaser at the execution sale, are one and the same person; and (2) the property was sold, within the meaning of the Deficiency Judgments Act, *directly* to plaintiff, Kathryn Stibbe.

The apparent common objective of counsel's second and third propositions is to insulate Kathryn Stibbe, purchaser, from Jan P. M. Stibbe, co-owner by the entireties of the judgment, and to demonstrate that the *direct* sale of the property to her could not be, at the same time, an *indirect* sale of the property, or any

interest therein, to him. If the Deficiency Judgments Act provided relief only in the case of direct sale to the execution plaintiffs, the third proposition might be well taken, since the sheriff's deed granted title to only one of the co-plaintiffs. Significantly, however, the act affords relief also where the property is sold *indirectly* to the plaintiff. For example, the judgment debtor is entitled to the protection of the act where the property was sold to strangers, if these purchasers were in fact straw parties acting for plaintiff: Eyler v. Beck, 46 Westmoreland 23 (C. P. Westmoreland Co., 1964). This indicates that construction of the act should be guided by the substance rather than the mere form of the transaction. In this example, the chain of connection necessary to show an indirect sale to plaintiff was to be supplied by proof of communications between plaintiff and the alleged straw parties. Here, however, where purchasing plaintiff and nonpurchasing plaintiff concededly are co-owners as tenants by the entireties of the judgment under which the execution sale was made, a sufficient chain of connection for the purposes of the Deficiency Judgments Act has been established, by virtue of the reciprocal rights and obligations which the law itself attributes to that relationship. Tenancy by the entireties, as one species of joint ownership, comes within the majority rule stated in the annotation, 6 A. L. R. 297 (citing, inter alia, Duff v. Wilson, 72 Pa. 442 (1872); and see: Lund v. Heinrich, 410 Pa. 341, 344, 345, 189A. 2d 581, 583 (1963)):

"A tenant in common in possession and enjoyment of the common property occupies a confidential relation to his cotenants, and because of this relation there is an implied obligation on his part to sustain and protect the common title. It is therefore a general rule that if a cotenant in possession of common property

purchases that property, either directly or indirectly, at a sale under foreclosure of a mortgage or deed of trust, the purchase will be deemed to have been made for the benefit of all the cotenants; provided, however, the other cotenants elect within a reasonable time so to consider the purchase and offer to contribute their respective portions of the purchase price".

This rule was applied specifically to an estate by the entireties in Sharp v. Sharp, 15 D. & C. 2d 771, 773, 778 (C. P. Bucks Co., 1958). There, husband and wife acquired certain real estate subject to a mortgage. Subsequently, after the parties were divorced, the mortgagee entered judgment against both on the bond accompanying the mortgage and bought in the premises at the sheriff's sale. The wife immediately paid the costs and balance of indebtedness to the mortgagee savings and loan association. At the direction of the mortgagee, the sheriff made out the deed to the wife as grantee. Thereafter, the husband brought an action in equity against the wife for partition under the Act of May 10, 1927, P. L. 884, 68 PS §501, et seq. The court rendered judgment on the pleadings for plaintiff, and Satterthwaite, J., said:

"It is well settled, as plaintiff contends, that where two or more persons have a joint or common interest in an estate, none of them can purchase an encumbrance or outstanding title adverse to the whole and set it up against the others for the purpose of depriving them of their interests; in such a case, the purchase inures to the benefit of all of them: Weaver v. Wible, 25 Pa. 270; Keller v. Auble, 58 Pa. 410; Dickey's Appeal, 73 Pa. 218; Fisher v. Hartman, 165 Pa. 16; McGranighan v. McGranighan, 185 Pa. 340; Raker v. G. C. Murphy Company, 358 Pa. 339. . . .

"We believe that we must look to the realities of the situation presented by the within proceedings. Had defendant directly become the successful bidder at the

sheriff's sale, whether by prior arrangement with the foreclosing creditor or otherwise and whether for the bare amount of the debt and costs or for some other amount, the precedents already mentioned leave no doubt but that her purchase would have inured to the benefit of the preëxisting entireties estate of which she was one of the tenants, subject, of course, to a claim for reimbursement of expenditures occasioned thereby. The only divergence from that plan in this case was that the agreement of the creditor thereto was reached immediately after the sale and before it had been confirmed and executed, instead of immediately prior thereto, under her version of the facts. We believe this to be a factual difference not amounting to a legal distinction. Insofar as either she or the creditor are concerned, the results are exactly the same whichever maneuver might have been followed. By the same token, we see no reason why the consequences to plaintiff's equity in the premises should be regarded in a different light.

"The quasifiduciary responsibility resting upon tenants in common and joint tenants with respect to the interests of their cotenants, and the resulting rule of public policy above outlined, should not be made to depend upon finespun factual maneuvering and technical niceties of timing or tactical choice of procedural devices. . . ."

These principles are equally applicable, where the subject of the estate by the entireties is personal property, to the derivative proceeds of such property. With respect to the proceeds of certain securities, in Nachman v. Nachman, 417 Pa. 389, 394, 208 A. 2d 247, 250 (1965), Mr. Justice Jones said:

"Once a tenancy by the entirety has been created, then neither spouse can appropriate to his own use the property held in such tenancy and the only appropriation which can be justified is an appropriation made in

good faith for the mutual benefit of both parties to the tenancy: Berhalter v. Berhalter, supra, [315 Pa. 225, 227, 173 A. 172]; Interboro Bank and Trust Company Appeal, 359 Pa. 315, 318, 59 A. 2d 101; Runco v. Ostroski, 361 Pa. 593, 595, 65 A. 2d 399".

In Brose Estate, 416 Pa. 386, 391, 306 A. 2d 301, 304 (1965), Mr. Chief Justice Bell said, with reference to a bank account:

"Withdrawing by one tenant and appropriating money or property to the withdrawer's own exclusive use without the consent or subsequent approval of the other tenant, terminates the tenancy at the option of the co-tenant, but not the co-tenant's right to an accounting and to one-half thereof".

In the instant case, the act of Kathryn Stibbe in purchasing and taking title as "Femme Sole Trader" served only to emphasize her intention to appropriate for her own separate use the real property which represented the proceeds of the judgment, owned by herself and Jan P. M. Stibbe as tenants by the entireties. As indicated in Brose Estate, supra, this afforded Jan P. M. Stibbe the option to treat this act as terminating the estate by the entireties, but it did not destroy his right to pursue equitable remedies for the purpose of vindicating his interest in the said property. Since the execution sale invested him with this right, we conclude that the property was sold indirectly to Jan P. M. Stibbe as well as directly to Kathryn Stibbe, with the result that petitioner is entitled to the relief afforded by the Deficiency Judgments Act.

### DECREE

And now, June 21 1967, the petition of Andrew Doukas is granted and the Prothonotary of Pike County is directed to mark the judgment in this case in favor of Jan P. M. Stibbe and Kathryn Stibbe, his wife, plaintiffs, against Andrew Doukas and Perdou, Inc., defendants, satisfied.