# Rambo, Appellant, *v.* Pile.

*Trust and trustees—Banks and banking—Bank deposit in trust for another named—Intention—Evidence.*

Where a real estate dealer makes a deposit in a bank in his own name as a trustee for another person named, and he does this for his own convenience or advantage, intending to retain title to and power of disposing of the funds, and he carries out this intention by depositing in the account large sums of money belonging to himself and his customers,

and withdrawing the same, and he continues to do this until after the person named as cestui que trust dies and until his own death, the representatives of such person have no title to the fund.

Argued Jan. 13, 1908.  Appeal, No. 262, Jan. T., 1907, by plaintiff, from order of C. P. No. 3, Phila. Co., June T., 1905, No. 737, entering judgment for defendant on referee's report in case of Ritter L. C. Rambo, Executor, etc., of Elizabeth S. Burton, deceased, v. Charles H. Pile and William T. Clark, administrators pendente lite of the Estate of Amos Burton, deceased.  Before MITCHELL, C. J., FELL, BROWN, MESTRE-ZAT, POTTER, ELKIN and STEWART, JJ.  Affirmed.

Exceptions to report of Ira J. Williams, Esq., referee.
The opinion of the Supreme Court states the case. .

*Error assigned* was in entering judgment for defendant.

*Charles Knittel*, for appellant, cited : Smith's Estate, 144 Pa. 428 ; Dickerson's Appeal, 115 Pa. 198.

*Arthur S. Arnold*, with him *Maurice G. Belknap*, for appellees, cited : Haux v. Savings Institution, 37 N. Y. Supp. 917; Flanagan v. Nash, 185 Pa. 41 ; Crawford's Appeal, 61 Pa. 52 ; Bartlett v. Remington, 59 N. H. 364 ; In re United States Trust Co., 102 N. Y. Supp. 271 ; In re Totten, 179 N. Y. 112 (71 N. E. Repr. 748) ; Moore v. Moore, Law Reports, 18 Eq. 474 ; Jones v. Lock, Law Reports, 1 Chancery Appeal Cases, 25 ; Gaskell v. Gaskell, 2 Young & Jervis, 502.

OPINION BY MR. JUSTICE MESTREZAT, March 2, 1908 :

This is a feigned issue to determine the ownership of $8,314.71 which stood to the credit of " Amos Burton, trusteé for E. S. Githens," on the books of the banking department of the Integrity Title Insurance, Trust and Safe Deposit Company, at the time of the death of Amos Burton, January 26, 1905.  The plaintiff is the executor of Elizabeth S. Burton, the cestui que trust named on the books of the bank, and the defendants are the administrators of Amos Burton, the trustee.  The contest, therefore, in the court below and here is between the representatives of the trustee and the cestui que trust, both claiming to be entitled to the fund in controversy.  The case was

tried before a referee, appointed under the Act of May 14, 1874, P. L. 166, 2 Purd. (12th ed.) 1845. He found that the money in dispute is the property of the estate of Amos Burton, deceased, and should be paid to the defendants, his representatives. The referee found and stated the facts in his report and they need not be repeated here in detail. The court below entered judgment on the referee's report in favor of the defendants. The appellant has not excepted to the findings of fact, and there is no assignment of error raising the question of their correctness. The only error assigned is that the court erred in entering judgment in favor of the defendants and in not entering judgment for the plaintiff.

The single question, therefore, on this appeal is, whether the referee was justified in finding that the money deposited in the trust company belonged to Amos Burton at the time of his death. This was a question of fact, and under the evidence we think the referee committed no error in finding that the fund was the property of Amos Burton when he died· in January, 1905.

The intention of Amos Burton in making the deposit must be ascertained and be permitted to determine the ownership· of the fund in dispute. If he intended to constitute himself a trustee for Githens, and as such held the fund for her, the plaintiff, as her legal representative, would be entitled to have the fund awarded to him; if, on the other hand, Burton made the deposits in his name as a trustee for his own convenience or advantage intending to retain title to and the power of disposing of them, and carried out the intention and disposed of them as his own funds until his death, then the plaintiff can have no claim upon them, and the learned referee was right in awarding the fund in court to the defendants.

In Gaffney's Estate, 146 Pa. 49, the decedent in his lifetime made a bank deposit to the credit of himself in trust for one Polly McKim. He also had another account in the same bank in his own name. In the distribution of his estate, the orphans' court refused to award the fund, held in trust, to the cestui que trust. In reversing the orphans' court Chief Justice Paxson said (p. 53): "It was contended that Mr. Gaffney (trustee) never intended the money should go to Mrs. McKim; that his only object in depositing the money in her name, or

in trust for her, was to increase his deposit in bank over the limit of $2,000. But of this there was not a word of reliable testimony. . . . Upon the face of the bank book, the money belonged to Polly McKim, and there is not sufficient upon the record to rebut this presumption." In the recent case of Merigan v. McGonigle, 205 Pa. 321, a depositor who had one account in her own name, opened another in the same bank in her name as trustee of her foster daughter. At intervals for nearly nine years deposits were made in each account to the limit of the amount permitted by the rules of the Saving Fund Society. There were no withdrawals. The depositor declared that the money ·was the beneficiary's and,was deposited for her. The depositor died without withdrawing any of the money, leaving it all deposited in her name as trustee. This court held that the evidence was sufficient to warrant the court below in submitting the case to the jury on the question whether the depositor intended to create a trust for the person named as beneficiary. In the opinion it is said (p. 326): "It is clear that the question of the intention of the donor in making the deposit was, under the evidence, for the jury, and was not submitted in a manner prejudicial to the appellant. . . . There is not a particle of evidence to show that Mrs. Fitzgerald (the depositor and trustee) had made the deposit for any other purpose than that disclosed by the books of the bank. She lived ten years after she opened the account and expressed no desire to withdraw the money and apply it to her own use, and made no attempt to revoke the trust she had created for the appellee."

It will be observed that both of these decisions are based on the depositor's intention and its subsequent consummation to constitute himself a trustee for the benefit of the person named. In ascertaining such intention, recourse may be had to parol testimony disclosing all the facts and circumstances connected with the deposit made by the trustee. While standing alone the entry in the bank books may show prima facie the intention to make a deposit in trust for the beneficiary, as suggested in Gaffney's Estate, but the intention of the depositor in directing such entries to be made on the books of the bank may be shown to have been for a different purpose than creating a trust for the party named as the beneficiary. In each

case, therefore, it becomes a question of fact to be determined upon all the evidence submitted.

On June 18, 1891, Burton opened an account with the banking department of the Integrity Title Insurance, Trust and Safe Deposit Company, and deposited as his first credit the sum of $398. The account was opened and appeared on the company's books in the following form : ·" Amos Burton, Trust." His pass book read : " Amos Burton, Trustee." Within six or eight months thereafter, by his direction, the words, " for E. S. Githens " were added on the bank's ledger, which then read : " Amos Burton, Trustee for E. S. Githens." No change was made in the signature book nor in the pass book. At this time his only relation to E. S. Githens was that of a tenant of a building owned by her. A year or two afterwards Mrs. Burton died, and in 1896 or 1897 Burton married E. S. Githens. She died in April, 1900. No change was made in the name in which the account stood, and it remained the same on the books of the bank at Burton's death in 1905. Save for the form of the deposit, every fact in the case points to the intention of Burton to retain control of the fund and dispose of it at his pleasure. When he opened the account and added the word " Trust." to his name on the books of the bank, no beneficiary was named, and there is no reason suggested why he deposited the fund to himself as trustee. He was a real estate agent, and, as his bank account shows, he handled large sums of money from the time he opened the account until his death. He had no other account in the bank, and made all his deposits in and drew all his checks on this account. No one has appeared to claim any interest in the moneys deposited by him in this account prior to the change made to E. S. Githens. The account was an active one from the beginning, and, as found by the referee, " through it passed a multitude of financial transactions." Very large sums in the aggregate were deposited by Burton in this account and were checked out in small amounts. This was the only bank account he had, and through it he transacted all his business. From the time her name was added as a beneficiary to the Burton account until her death, Githens had an account in her own name in the same trust company.

There was no change made in the account after Githens died. Burton continued to make deposits in his account as trustee for her, and he drew checks on the account as he had done prior to her death. When he died in 1905 the balance of the account stood in his name as trustee for E. S. Githens. For thirteen years, therefore, he did all his banking through this account. Whatever funds he received, and from whatever source they came, they went into this account. Likewise, whatever debts were paid by him were paid by checks upon this account. There is no evidence whatever to show that Githens ever made any suggestion in regard to the account or attempted to exercise any authority over it. Burton dealt with it as his own fund from the first deposit he made until the last check he drew before his death. It was absolutely in his dominion and under his control, and, so far as the evidence discloses, no other person had aught to do with it. Even after her death when he received checks from her estate he deposited them to his credit in this account.

There has been no reason assigned, aside from the form of the deposit, why Burton intended to hold this money in trust for Githens. When her name was added as a beneficiary his first wife was living, and he certainly could not then have anticipated both the death of his wife and his subsequent marriage to Githens. It is true, Githens was the owner of the building in which he had his office, but that does not account for an intention to make her the beneficiary of a bank account which would contain thousands of dollars and thereby the owner, so far as appears, of all the money Burton had. He was a real estate agent, and carried on the business himself. It does not appear that Githens had any interest in it, and there is no reason disclosed why the entire proceeds from that business should have been handed over to her by Burton depositing them to her credit in the bank. Such would be the result of holding that Burton's intention was to constitute himself a trustee for Githens for the money deposited in the Integrity Trust Company.

The fact that the bank account was continued in the same form after her death as it was prior to her death tends strongly to show that the form adopted by Burton was for his own convenience or advantage and not with an intention to hold the

funds deposited as trustee for Githens. After the date of her death, there was no beneficiary named on the books of the bank and there could be no claim by her legal representatives for the deposits made after that date.

In the cases of this court, cited above, where a trust was sustained, it will be observed that the beneficiary was living at the death of the trustee, and that the account was not an active one but the deposits remained until the death of the trustee, except as they were augmented by interest. No checks were drawn in payment of the individual indebtedness of the trustee. No dominion or control was exercised by the depositor over the fund after it had reached the bank, but it remained there until his death. There were no contemporaneous facts or circumstances which disclosed a purpose on the part of the depositor other than that shown by the form of the deposit. In the present case, however, exactly the opposite appears. There is nothing in it to show an intention on the part of the depositor to hold the fund in trust, except the form of the deposit. All the circumstances surrounding the deposit tend to establish the fact that the deposit was made with the intention, on the part of the depositor, of retaining the control and ownership of the fund in himself and that he did exercise absolute control over the fund from its inception until the date of his death.

The uncontroverted facts found by the learned referee fully warrant his conclusion that the fund in dispute belonged to Burton, and, therefore, the judgment is affirmed.