Ingels Estate.

Argued October 1, 1952. Before STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*John T. Conner,* with him *Dalzell, Pringle, Bredin and Martin,* for appellant.

*John E. McCalmont,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, November 25, 1952:

The question raised by this appeal is whether decedent by her letter to the beneficiary made irrevocable a tentative trust of a savings bank account of decedent titled "Mrs. William M. Ingels in trust for James M. Peck".

James M. Peck, claiming as beneficiary of an irrevocable trust, filed exceptions to the account of the executor and has appealed from the decree of the Orphans' Court of Allegheny County which dismissed those exceptions. The decree of distribution awarded the fund to the estate of the deceased depositor, on the theory that she had created a tentative trust which was revoked by her withdrawal of the money from the account a week before her death.

The account in question was created by Mrs. Ingels on October 1, 1942, with the proceeds of another "in-trust" account which she closed on the same day. This account in turn had been started in 1941 with the amount withdrawn from an account which Mrs. Ingels had theretofore maintained in the name of "Mrs. William M. Ingels in trust for Lawrence C. Washington". She closed the Peck account on February 27, 1950, six days before her death and redeposited the $6,-747.35 withdrawn therefrom in a checking account maintained in her own name in another bank. Adam Roscoe, assistant cashier of the savings bank, testified that the same money was involved in all these transactions.

The letter which, according to appellant's argument, converted the tentative trust so established into an irrevocable trust was postmarked November 18, 1942, and reads in part as follows:

"When I heard about officer's Training Camp etc. I began to wonder what little gift I could send you, but my doctor bills & dentist bills have come to away over 300.00 and my dividends are not half, what they were even last year.

"So I went to the Peoples-Pittsburgh bank about six or seven weeks ago where I have had a small saving's account there for ten or twelve years.

"It accumulated nicely for some years because they paid 3% and I had three bonds but they are all gone which were left there & the coupons put in; but now they only pay 1%. Any way, as a graduating gift, I have had that money left in the Peoples-Pittsburgh-Bank 'The Oakland Branch', put in *trust* for you and your heirs.

"It is only a few thousand dollars, but when I die, it may come in handy, for you or Virginia Lee or children and you can feel that I only wish it were more, but that I love you—"

Decedent addressed the appellant as "Dearest Jim" and signed the letter "Aunt Bess". There was in fact no blood relationship, but appellant was the son of a lifelong friend of decedent and a deep affection had always existed between them. On three occasions subsequent to the establishment of the account, decedent notified appellant that she was making either a birthday or Christmas present by depositing ten dollars in the trust account. Several other small deposits appear on the record of the account, which represent interest payments on bonds owned by decedent. There are also two unexplained withdrawals, each in the amount of $100.00.

Appellant concedes that the trust was revocable at the time of its creation and places principal reliance on the letter notifying him of a graduation gift for imparting an irrevocable character. The learned court below properly stated the rule of law to be: "The intention of the donor, as expressed by his acts and declarations, is the factor which determines the status of the trust."

Early cases in Pennsylvania dealing with savings account trusts recognized that a valid trust could be created by depositing money in the name of the depositor as trustee for another but made no distinction between tentative and irrevocable trusts. Thus in *Estate of Hugh Gaffney, Deceased,* 146 Pa. 49, 23 A. 163, Chief Justice PAXSON said for the Court at p. 54: "We have, then, the case of a deposit on the books of the bank of a sum of money in the name of Hugh Gaffney, trustee for Polly McKim. This makes out at least a prima-facie case for the appellant. Upon the face of the bank book, the money belonged to Polly McKim, and there is not sufficient upon the record to rebut this presumption. This money should have been awarded to the appellant."

In *Merigan v. McGonigle,* 205 Pa. 321, 54 A. 994, the Court sustained another such trust, saying through Justice MESTREZAT, at p. 327: "Retention of the pass book by the depositor is not, under the circumstances here, decisive against the validity of the trust: Martin v. Funk (N. Y.), 31 Am. Rep. 446; Atkinson's Petition (R. I.), 27 Am. St. Rep. 745; Smith v. Bank (N. H.), 10 Am. St. Rep. 400; Connecticut River Savings Bank v. Albee, supra. Its possession was necessary, as in other cases of a deposit by a trustee, in order to enable the depositor to perform her duties as trustee of the fund deposited. Without anything disclosing a contrary intention, it will be presumed

that she retained the book as trustee, and not in her individual capacity."

In *Rambo v. Pile,* 220 Pa. 235, 69 A. 807, a similar fund was awarded to a depositor's estate because the evidence disclosed that he had always regarded and treated it as his own. In the opinion Justice MESTREZAT restated this rule in these words (p. 237): "The intention of Amos Burton in making the deposit must be ascertained and be permitted to determine the ownership of the fund in dispute. If he intended to constitute himself a trustee for Githens, and as such held the fund for her, the plaintiff, as her legal representative, would be entitled to have the fund awarded to him; if, on the other hand, Burton made the deposits in his name as a trustee for his own convenience or advantage intending to retain title to and the power of disposing of them, and carried out the intention and disposed of them as his own funds until his death, then the plaintiff can have no claim upon them, and the learned referee was right in awarding the fund in court to the defendants."

In *Scanlon's Estate,* 313 Pa. 424, 169 A. 106, we quoted with approval the case *Matter of Totten,* 179 N. Y. 112, 71 N. E. 748. This Court adopted for the first time the theory of *tentative trust.* We thus varied our earlier rule to the extent of saying that a deposit in a savings account in trust would make out a prima facie case of a revocable trust only. Mr. Justice (later Chief Justice) SCHAFFER said for the Court at p. 428: ". . . there is no evidence of an intention to create an irrevocable trust at the time of deposit. Neither is there evidence here of any further acts by Mrs. Scanlon which show an intention to make the trust irrevocable. . . . 'In the absence of evidence of a different intention of the depositor, the mere fact that a deposit was made in a savings bank in the name of the

depositor "as trustee" for another person is sufficient to show an intention to create a revocable trust.' "

Such rule is in accord with the analysis of Professor Austin Wakeman Scott (author of the Law of Trusts) in 43 Harv. L. R. 521, 540: "The most common situation involving such a trust [settlor declaring himself trustee] arises where a person deposits money in a savings bank in his own name as trustee for another person. The first question which arises is one of intention. The depositor's intention may be to create an irrevocable trust to arise immediately. He may not intend to create a trust at all. He may intend to create a revocable trust. Evidence is admissible in all cases to show which was the intention of the depositor. The evidence may show that the depositor intended to create an irrevocable trust. Thus, if he notifies the beneficiary of the trust, and particularly if he delivers the bankbook to the beneficiary, or if he makes statements showing his intention to create an irrevocable trust, the trust will be irrevocable at the outset or become irrevocable during the lifetime of the depositor. . . . In the absence of any evidence other than the form of the deposit, it is generally held that a revocable trust is intended."

See also: *Bearinger's Estate,* 336 Pa. 253, 9 A. 2d 342; *Vierling v. Ellwood City Federal Savings & Loan Association,* 356 Pa. 350, 52 A. 2d 224; Scott on Trusts (1939) sec. 58 et seq.

The presumption that a revocable trust is intended by such a deposit is an exception to the general rule that trusts are irrevocable unless a power of revocation is expressly reserved: Scott on Trusts (1939), secs. 329A, 330.2; *Kraft v. Neuffer,* 202 Pa. 558, 561, 52 A. 100; *Fishblate v. Fishblate,* 238 Pa. 450, 458, 86 A. 469. The opinions in the *Totten* and *Scanlon* cases, supra, make it clear that the reason for the exception is that the cir-

cumstances surrounding the establishment of such accounts indicate that the depositors usually have no intention of irrevocably divesting themselves of beneficial ownership of their money when they deposit it "in trust" for another. Because the exception depends on the peculiar circumstances of this type of transaction, we have never extended the doctrine of tentative trusts to any property other than a savings account. See: *Tunnell's Estate*, 325 Pa. 554, 560, 190 A. 906; *Brown v. Monaca Federal Savings and Loan Association*, 352 Pa. 1, 42 A. 2d 50; Scott on Trusts (1939) sec. 58.3: "It is clear that a similar trust of property other than savings bank deposits would be invalid."

In the instant case we are faced with the problem of deciding the quantum of evidence necessary to establish that the depositor intended to make irrevocable a trust which was admittedly revocable at its inception. No reason appears why savings accounts should be treated differently from other property for this purpose, and we therefore apply the general rule that a trust does not arise unless the intent of the alleged settlor to create one clearly appears. Thus in *Tunnell's Estate*, 325 Pa. 554, 556, 190 A. 906, we said through Justice LINN: "The burden of proving their equitable title was on claimants. Such a trust 'must be created by clear and unambiguous language or conduct, it cannot arise from loose statements admitting possible inferences consistent with other relationships': Wallace's Estate, 316 Pa. 148, 151, 174 A. 397; Brubaker v. Lauver, 322 Pa. 461, 185 A. 848." A similar burden rested on appellant herein to produce evidence of "clear and unambiguous language or conduct" indicating that Mrs. Ingels intended to make the tentative trust irrevocable.

It is true that the letter above quoted and the later gifts by way of deposits into the trust account support

an inference that such was her intention. However, many facts disclosed by the record tend to indicate a contrary intention, e.g.:

(a) in her letter of November, 1942, the decedent stated that "when I die, it may come in handy". Here, in the very letter which is the basis of appellant's claim, Mrs. Ingels clearly indicated that he was not to have the money until her death. There is not a word in the letter to indicate an intention to reserve a life interest to herself in income only; she reserved control over the whole fund until her death. If appellant's contention that this letter made the trust irrevocable prevails, it may follow that the trust was a dry one, for Mrs. Ingels then held a sum of money in her name as trustee concerning which she had absolutely no duties to perform. In this event the beneficiary could have claimed the funds immediately, and it is clear that such a result would have done violence to the expressed intent of the depositor that he take it only after her death.

(b) that Mrs. Ingels always so regarded the fund is again made clear by her statement in a letter written in 1946 to the assistant cashier of the bank: "As I have had so many stocks called which paid good interest, & now the money lying idle in my checking account, that I do not feel it would be right to put this sum into James M. Peck's hands now:—I might need it very badly."

(c) Mrs. Ingels twice previously set up accounts in similar form and withdrew the funds at her own pleasure. There is nothing in the record to indicate that the conditions attached to the creation of these three accounts in identical form in the same bank differed in any respect. The force which would ordinarily attach to the use of the word "trust" is greatly weakened by this evidence that the settlor was accustomed to using it to describe a revocable transfer.

(d) on two occasions she withdrew $100.00 from the account in question and not a word of explanation of these withdrawals is provided by the present record. The only inference which can properly be drawn from them is that Mrs. Ingels continued to regard this fund as subject to her control and that she withdrew the money when need arose.

These and other factors which were carefully reviewed by the learned auditing judge in his comprehensive opinion impelled him to the following conclusion, with which we agree: "The modest size of her investment capital, the diminution of income therefrom, her widowhood, and her age all evidence that she did not intend to create an irrevocable trust, which would prevent her from using the money deposited in the 'in trust' account if she needed it during her lifetime. The inference to be drawn from these facts is that she intended that the money on deposit in the 'in trust' account should become the absolute property of James M. Peck only in the event that she died without revoking the trust."

Appellant relies upon *McGary Estate*, 355 Pa. 232, 49 A. 2d 350, but the circumstances which indicated that each of the six savings account trusts there involved was intended to be irrevocable were clear and unequivocal as contrasted to the conflicting inferences found in the present case. The bank books for five of the trusts were delivered to the beneficiaries by the depositor with the statement to each that the account was a gift. The creation of the sixth account was described as follows in the opinion of the learned court below, which we affirmed PER CURIAM (p. 238): "(4) One of the accounts was in the name of the decedent 'in trust for' Eugene McGary. The evidence is that many years prior to the opening of this account the decedent had received a sum of money from her brother, Eugene

McGary, and this account was the method adopted for paying the debt. In 1940 the decedent notified her brother that she had opened the account and would deliver the bank book to him whenever he wanted it. She wished to send it to him, but he told her to hold it for him until he should come from Chicago, where he lived, to Pittsburgh. He was in ill health and did not see the decedent before her death. The decedent told her niece, Mrs. Edmondson, where, in her apartment, the book was to be found so that it could be delivered to her brother when he came to Pittsburgh. The decedent deliberately refrained from placing the book in her safe deposit box."

Appellant having failed to establish by sufficient evidence an intent to create an irrevocable trust, the presumption of revocability arising from the form of the deposit controls, and the learned court below properly awarded the fund to the decedent's estate.

Decree affirmed at appellant's cost.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

Did the deposit of moneys by Mrs. Ingels in a savings account opened by her titled "Mrs. William M. Ingels in Trust for James M. Peck" plus her acts and declarations, create a revocable or irrevocable trust? Prior to the dictum in *Scanlon's Estate*, 313 Pa. 424, 169 A. 106, which adopted "The Totten tentative trust doctrine" the law of Pennsylvania was clearly established that (1) the deposit of a sum of money in a bank in the name of the donor as trustee for the named beneficiary created a valid trust, and (2) such facts were sufficient to make out a prima facie case of an irrevocable trust for the beneficiary: *Estate of Hugh Gaffney*, 146 Pa. 49, 54, 23 A. 163; *Merigan v. Mc-*

*Gonigle,* 205 Pa. 321, 54 A. 994. In the latter case, this Court reaffirmed the rule even though no notice of the trust was given to the beneficiary and said, inter alia (page 327) : "Retention of the pass book by the depositor is not, under the circumstances here, decisive against the validity of the trust: Martin v. Funk (N.Y.) 31 Am. Rep. 446; Atkinson's Petition (R.I.), 27 Am. St. Rep. 745; Smith v. Bank (N.H.), 10 Am. St. Rep. 400; Connecticut River Savings Bank v. Albee, supra. Its possession was necessary, as in other cases of a deposit by a trustee, in order to enable the depositor to perform her duties as trustee of the fund deposited. Without anything disclosing a contrary intention, it will be presumed that she retained the book as trustee, and not in her individual capacity. "

What was the Totten case? In *Matter of Totten,* 179 N.Y. 112, decedent created numerous deposit trusts, one of them a deposit in trust for Emile R. Lattan. *The decedent always treated the account as her own,* drawing against it repeatedly and making new deposits from time to time as she thought best. *She never spoke to the beneficiary or to anyone about this account* or stated what her intention was in opening it. She retained possession of the pass book and no one except the depositor and the officers of the bank knew of the existence of the account until after her death. The New York Court held that those facts and circumstances clearly demonstrated that the decedent had no intention of creating an irrevocable trust for Emile R. Lattan; but reversing many of their prior decisions laid down a new presumption, doctrine or rule: "A deposit by one person of his own money, in his own name as trustee for another, *standing alone,** does not establish an irrevocable trust during the lifetime of the deposi-

---

* Italics throughout, ours.

tor. It is a tentative trust merely, revocable at will, *until the depositor* dies or *completes the gift in his lifetime by some unequivocal act or declaration, such as* delivery of the pass book or *notice to the beneficiary."* The reasons given for this new presumption or doctrine is that "It became a common practice for persons to make deposits in that form in order to evade restrictions upon the amount one could deposit in his own name . . . and [by evading such restrictions] obtain a higher rate of interest . . . ." In other words, the law of trusts was changed in order to enable a depositor to deceive a savings bank and to evade statutory or banking restrictions and thus obtain more interest. This doctrine or rule has also been justified subsequently on the ground that the trust is a poor man's will, thus evading and nullifying the requirements of the Wills Act.**

It is clear from the opinion in *Matter of Totten* that the basis for the new presumption or doctrine (which was not called to the attention of this Court) is founded upon an intent and a device to deceive; it establishes a presumption contrary to the prima facie meaning of the depositor's language; it is admittedly contrary to the general law of trusts; and for these reasons it is unjustifiable and should no longer be followed in Pennsylvania.

However, even if the Totten Trust Rule is reaffirmed, under no circumstances can the decision of the majority be legally or morally justified. Where, as here, the settlor deposits cash in a savings account in trust for the beneficiary and notifies the beneficiary that she has created a trust for him, the majority opin-

---

** For a discussion of the pitfalls into which the Totten rule leads and the inconsistent decisions of the Courts in applying it, see Scott on Trusts, Vol. I, §58.4 et seq.

ion flies in the teeth of the Totten Rule and of the recent decisions of this Court which followed the Totten Rule, as well as in the teeth of all the leading text writers.

Authorities agree that two essential elements are requisite to constitute a valid gift inter vivos: (1) An intention to make the gift, and (2) an actual or constructive delivery which divests the donor of his dominion over the subject. Moreover, the burden of proof is upon a person claiming an inter vivos gift and the proof thereof must be clear and convincing: *Sullivan v. Hess,* 241 Pa. 407, 88 A. 544; *Reese v. Trust Company,* 218 Pa. 150, 67 A. 124; *Smith's Estate,* 237 Pa. 115, 85 A. 76. All authorities are in accord that whether the deposit of cash in a savings bank in the name of the depositor in trust for another is a tentative or revocable trust or an irrevocable trust or no trust at all, depends upon the intention of the parties; hence evidence is admissible in all such cases to show what the actual intention of the depositor or donor was, and this intention can be shown by the statements, declarations, admissions, acts and conduct of the parties. *Matter of Totten,* 179 N. Y., supra, and the law of "Restatement of Trusts", and all the leading text authorities and even the recent leading Pennsylvania authorities upon which the majority rely—all hold that the presumption or rule that a revocable trust was intended by the deposit of cash in a savings bank account in trust for a named beneficiary may be overcome "by some unequivocal act or declaration such as . . . notice to the beneficiary". *Scanlon's Estate,* 313 Pa. 424, 427, 169 A. 106; *Vierling v. Ellwood City F. S. & L. Assn.,* 356 Pa. 350, 354, 52 A. 2d 224; *McGary Estate,* 355 Pa. 232, 239, 49 A. 2d 350; Scott on Trusts, Sec. 58.1; Restatement, Trusts, Sec. 58, Comment a. In *McGary Estate,* 355 Pa. 232, 239, 49 A. 2d 350, this Court adopt-

ed Comment a of the Restatement, Trusts, Sec. 58, as follows: "Although notice to the beneficiary is not essential to the creation of a trust, *notification by the depositor to the beneficiary of the deposit is evidence of an intention that the trust should be irrevocable, whether such notification is given at the time of the deposit or subsequently* . . . ." Professor Austin Wakeman Scott (author of the Law of Trusts) in 43 Harv. L. R. 521, 541, thus states the law: "Thus, *if he* [the depositor] *notifies the beneficiary* of the trust . . . or if he makes statements showing his intention to create an irrevocable trust, the trust will be irrevocable at the outset or become irrevocable during the lifetime of the depositor . . . ."

In the light of all these authorities it is clear that Mrs. Ingels evidenced her intention to make these gifts absolute or irrevocable by notifying the beneficiary half a dozen times that she had placed these moneys in trust for him, as well as by the character of these gifts. Assuming that Peck, the beneficiary, had the burden of proof, the declarations, acts and conduct of the donor clearly showed her intention shortly after the original deposit and at the time of each subsequent Christmas, birthday and other gifts to create an absolute or irrevocable trust for Peck. For example seven weeks after Mrs. Ingels opened the account in the name of "Mrs. William M. Ingels in Trust for James M. Peck" she notified the claimant by letter of November 17, 1942, that she had made him a graduation gift by leaving money in the Peoples-Pittsburgh Bank in trust for him and his heirs. The pertinent provisions of this letter are as follows: "Dearest Jim: . . . It shall not be much over a week, when you receive this, before you shall be graduated. When I heard about Officer's Training Camp, etc., I began to wonder what little gift I could send you, but my doc-

tor bills and dentist bills have come to away over $300. and my dividends are not half, what they were even last year.

"So I went to the Peoples-Pittsburgh Bank about six or seven weeks ago and where I have had a small saving's account there for ten or twelve years.

"It accumulated nicely for some years because they paid 3% and I had three bonds but they are all gone which were left there & the coupons put in; but now they only pay 1%. Any way, *as a graduating gift,* I *have had* that money *left* in the Peoples-Pittsburgh-Bank 'The Oakland Branch', but in *trust for you* and your heirs. [Could a layman use clearer language?]

"It is only a few thousand dollars, but when I die, it may come in handy, for you or Virginia Lee or children and you can feel that I only wish it were more, but that I love you—

"When the war is over & our debt is slowing down, it may again pay 2%—That seems better to me, than to draw it out for Christmas gifts. So we shall forget about it, except to say that I gave your address 727 Maine St. Vallejo, California . . . . [signed] Aunt Bess".

It will be noted that Mrs. Ingels does not speak of a future gift or of her intention to make a gift but that she has already left the money in the bank in trust, not for herself, but "for you and your heirs" as a graduation gift; and she notified the bank of his address. Combined with the language of the deposit— "Mrs. William M. Ingels in Trust for James M. Peck" —that is clear, direct and convincing evidence that Mrs. Ingels actually and intentionally created a gift for Peck as a graduation present.

Moreover, on June 20, 1945, Mrs. Ingels added a little more money to Peck's trust fund and wrote him a confirming letter, the pertinent part of which is: "I

have written the Peoples Pittsburgh Bank and *you now have* a little more money in the trust." "You now have a little more money in the trust" means to me exactly what it says—it doesn't mean, as the majority interpret it, to wit, I have put a little more money in the trust for myself.

Again, three and a half months later, on October 5, 1945, Mrs. Ingels wrote Peck: *"Speaking of Christmas:*—shall I send you some little gift or add a check *to your trust fund* as I did on your birthday?" Can one imagine interpreting this letter to mean: Shall I send you some little Christmas gift or shall I add a check to my trust fund for myself as I did on your birthday? Yet that is the interpretation which the majority necessarily place upon this letter and upon this birthday gift and Christmas gift.

Moreover, Mrs. Ingels on three different occasions made a gift of $10.00 to him which she deposited in his trust account. Isn't it ridiculous to say that she made those $10.00 gifts—and a Christmas gift to him and a birthday gift to him—to herself, or that she tentatively made them to him but reserved the right to rescind them and take them back at any time she desired? These declarations and this conduct make it unmistakably clear that the donor, Aunt Bess, intended to make each of these gifts to "Dearest Jim" an absolute and unqualified one at the time of each of the above mentioned letters and deposits.

These facts, this conduct and these declarations of Aunt Bess are legally sufficient even under *Scanlon's Estate,* 315 Pa. supra, and *Matter of Totten,* 179 N. Y. supra, and all the authorities hereinabove cited, to establish an absolute or irrevocable trust for the boy she called "dearest Jim" since they all hold that "A deposit by one person of his own money, in his own name as trustee for another, standing alone, . . . is a tentative

trust . . ., revocable at will, *until the depositor . . . completes the gift* in his lifetime by some unequivocal act or declaration such as . . . *notice to the beneficiary."*

Six days prior to her death Mrs. Ingels withdrew the money from Peck's trust fund* and deposited it in a new account in her own name. This she was without legal power to do. If Mrs. Ingels had prior thereto created an absolute or irrevocable trust for Peck it is indisputably clear that (in the absence of fraud, mistake or exceptional circumstances not here present) she could not thereafter change her mind and revoke or rescind it: Cf. *Potter v. Fidelity Ins. Trust Etc., Co.,* 199 Pa. 360, 49 A. 85; *Rynd v. Baker,* 193 Pa. 486, 44 A. 551; *Miller Trust,* 351 Pa. 144, 40 A. 2d 484. Appellee points out that in the original letter from decedent notifying Peck of the trust which she had created for him at the Peoples Pittsburgh Bank she evidenced an intention to reserve the income therefrom for herself and postpone the payment of the principal to him until her death. This is, of course, a perfectly valid and customary inter vivos trust (See *Windolph v. Girard Trust Company,* 245 Pa. 349, 91 A. 634); the reservation of the income to the settlor for life without more does not make the trust revocable or affect or refute the trust's irrevocability.

The majority correctly state that appellant admits, as he must under *Scanlon's Estate,* 313 Pa., supra, that the mere designation "trustee for James M. Peck" creates prima facie a revocable trust, but appellant of course contended, and I am convinced correctly so, that this was overcome by the donor's subsequent declarations, letters, acts and conduct hereinabove set forth.

---

* Mrs. Ingels also withdrew $100. in July, 1943, representing "interest" and $100. in August, 1949, representing "interest".

The majority point out that Mrs. Ingels had twice previously set up accounts in trust for a named beneficiary and subsequently had withdrawn those funds, thereby demonstrating that she had intended only a revocable trust. The majority failed to note that in the only prior trust account as to which there is detailed evidence, her signature card permitted her to withdraw moneys from the fund whenever she desired, thus demonstrating, contrary to the majority's view, that she knew how to make a revocable trust when she so desired.

If the equivocal declarations made in *Irvine's Estate*, 372 Pa. 110, 92 A. 2d 544, which were refuted by claimant's own admissions, constituted clear, direct, precise and indubitable evidence to establish a claim against a decedent's estate, a fortiori, the declarations, admissions, acts and conduct of this donor which were far, far stronger in favor of the claimant, indubitably constituted clear, positive and convincing evidence to establish an absolute or irrevocable trust for Peck.

Justice MUSMANNO joins in this dissenting opinion.