# Irvine Estate.

Argued March 26, 1952; reargued October 8, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Clarence B. Nixon, Jr.,* for appellant.

*William R. Dennison, Jr.,* for appellee.

OPINION BY MR. JUSTICE JONES, November 25, 1952:

This is an appeal from a decree of the Orphans' Court of Washington County awarding to Agnes Tarr and Edward E. Tarr (husband and wife) the sum of $3,213.82 from the estate of Agnes Irvine, deceased, for room, board and laundry supplied the decedent in her lifetime by the Tarrs which she accepted. The award was limited to the period of time permitted a claimant by the statute of limitations. The appellant is Alice Lipps, a niece of the decedent and her sole heir and next of kin.

The appellant contends that the proofs adduced by the claimants were neither the quantity nor quality required to establish their claim, that they failed to overcome the presumption of payment and that they also failed to rebut the presumption of satisfaction. What the evidence did prove, qua facts, is clear and precise enough. The question involved is as to the legal sufficiency of the proofs to imply a promise to pay. No departure from the long and well established rules of law relative to claims against decedents' estates, resting in parol, is either suggested or effected by the result reached by the learned court below.

The auditing judge specifically found, and the evidence supports the findings, (1) that the claimants furnished the decedent with board, room and laundry continuously over a period of approximately ten years prior to her death and (2) that such services were reasonably worth $12 a week. In addition to these specific findings, the following facts are established by the adjudication of the auditing judge which was confirmed by the court en banc.

The decedent, a widow, went to live in the home of the Tarrs around 1938 and continued to live there without interruption until her death on May 2, 1948. She was not related to the Tarrs either by blood or marriage. She had the exclusive use of a room in the Tarr home as her bedroom and also had the freedom and use of the downstairs which included a bath room. Her meals, which the Tarrs supplied, she ate at their table. She was 78 years old at the time of her death and, during all of the time she lived with the Tarrs with the exception of a few weeks, she was able to move around the house, tidy up her own room and occasionally help with the dishes and cooking. Her laundry work was done by Mrs. Tarr.

The decedent owned a lot of ground in Washington, Pa., improved with a two-story dwelling which, after her death, was sold by her administrator for the payment of debts for the sum of $4,575. She left personalty of a total value of $42. Her only income, while she lived with the Tarrs, was $20 per month which she received as rent for her house. Out of that, she took care of her clothing, paid for the upkeep and taxes on her real estate and gave the Tarrs $3 *a month*. She wished not to convert her real estate in her lifetime, telling a friend (an almost daily visitor), who was a disinterested witness, that she paid the Tarrs "$3.00 a month for her room rent, and it was not enough," but that, if she sold her property, by the time ". . . she paid Agnes and Ed [the claimants] she wouldn't have anything to come and go on at all." She told another witness substantially the same thing.

As was said in *Gibb's Estate*, 266 Pa. 485, 487, 110 A. 236, "Ordinarily, an implied promise exists to pay for services rendered and accepted, and the burden is on the person denying liability to show no debt was, in fact, intended." This rule has long been recognized and followed by the courts of this State. In *Miller's Appeal*, 100 Pa. 568, 570-1, it was said that, "Nothing is better settled than that the performance and receipt of services, or the furnishing of board, raises an implied assumpsit by the one who receives to compensate the other . . . ." Such is the legal situation which the established facts in this case import. There was no relationship between the claimants and the decedent to negative the legal implication that the services would be paid for. Contrary to the statement contained in the appellant's brief, there is not a word of competent testimony in the record to show that Mrs. Tarr in her childhood had spent any time in the home of Mrs. Irvine or under her care. The suggestion in

such regard emanates from avowed hearsay not shown to have been uttered in the hearing of Mrs. Tarr who, incidentally, was excluded as a witness upon objection to her competency.

There is another legal presumption, however, that services so furnished and accepted were paid for periodically. See *Brown v. McCurdy,* 278 Pa. 19, 23, 122 A. 169; *Winfield v. Beaver Trust Company,* 229 Pa. 530, 532, 79 A. 138; and *Dowman Estate,* 156 Pa. Superior Ct. 655, 658, 41 A. 2d 339. But, the learned court below concluded, and we think correctly, that the evidence in the case overcame the presumption of payment. As already stated, the findings establish that the board, room and laundry work furnished by the Tarrs and accepted by the decedent were reasonably worth $12 a week. That fact was competently found and is not open to dispute here. It is also undisputed that, while Mrs. Irvine resided with the Tarrs, she had an income of but $20 per month and no capital assets that she could invade for the payment of her keep. From her income, she had nothing left after paying for clothing, the upkeep and taxes on her property and the $3 she gave the Tarrs each month. It is thus mathematically demonstrated that she could not possibly have paid currently the reasonable worth of the services the Tarrs were supplying. Indeed, Mrs. Irvine expressly so admitted to her friend and daily visitor when she acknowledged that the $3 a month she was paying the Tarrs was not enough and further recognized her indebtedness to them when she said that, if she sold her house and lot, *by the time she paid the Tarrs,* she would have nothing left "to come and go on."

The decedent's monthly payment of $3 to the Tarrs was manifestly incapable of supporting a *conclusive* presumption of satisfaction. Mrs. Irvine's acknowledg-

ment of her unpaid indebtedness to the Tarrs, as contained in her statements to the two witnesses, whom the auditor accredited, sufficiently refuted the idea that the $3 monthly payment was tendered and accepted in satisfaction of the claimants' services. As already quoted, the $3 a month was "for her room rent" according to the decedent. In *Dowman Estate,* supra, the Superior Court said (p. 658) that the auditing judge was not *required* to conclude that even a $25 monthly payment by the recipient of board, lodging and nursing services was payment in full of a claim for such services made after the recipient's death. Not only does the evidence in the instant case not disclose any agreement of the parties that the $3 monthly payment was to be in full satisfaction of the services furnished by the Tarrs but Mrs. Irvine's own statements refute any such idea. The decedent was, of course, entitled to a credit for the $3 monthly payments and, that, the court below properly allowed her estate against the reasonable worth of the claimants' recoverable services.

*Braden Estate,* 363 Pa. 42, 68 A. 2d 734, which the appellant cites as presenting a factual situation similar to the present, is not in point. It is not only a case of a *blood* relationship between the claimants and the deceased but, more important still, the claim there was founded on an express contract which the claimants failed to prove. Where a claimant pleads, but fails to prove, an express contract but does prove performance of valuable services which the beneficiary willingly accepted, the claim cannot be rested on a *quantum meruit.* As Chief Justice MAXEY said in *Lach v. Fleth,* 361 Pa. 340, 348, 64 A. 2d 821, "Such an action [on an express contract] and an action on a quantum meruit are utterly distinct" (citing cases). In *Roch's Estate,* 16 D. & C. 700, 703, Mr. Justice STEARNE,

then on the Orphans' Court of Philadelphia County, correctly said that "It is the general rule, based upon sound reason and logic, that one who alleges a contract and fails in his proofs may not thereafter rely upon a quantum meruit," citing *Witten v. Stout,* 284 Pa. 410, 131 A. 360. See, also, *Nuebling v. Topton Borough,* 323 Pa. 154, 156, 185 A. 725; and *Luzerne Township v. Fayette County,* 330 Pa. 247, 254, 199 A. 327. Apparently, the appellant misconceives the rationale of a contract implied from a given factual situation. In her brief she states that the instant claimants failed to prove an express contract. Of course, they did. They never averred one. She points, also, to the finding of the auditing judge that "there is no evidence . . . as to any [express] agreement, contract, or understanding . . . between decedent and claimants . . . ." That finding is entirely consonant with an obligation to pay, *implied* in the circumstances, where an express contract is neither averred nor relied on.

Decree affirmed at the appellant's costs.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

This is a claim against a decedent's estate. It has been firmly established for a century that claims which could and ordinarily would have been, but were not presented in the lifetime of the decedent must be clearly established by direct, positive and convincing evidence or as it is ofttimes expressed by "evidence that is clear, precise and indubitable". *Mooney's Estate,* 328 Pa. 273, 194 A. 893; *Stafford v. Reed,* 363 Pa. 405, 70 A. 2d 345; *Gross's Estate,* 284 Pa. 73, 130 A. 304; *Copeland's Estate,* 313 Pa. 25, 169 A. 367; *Braden Estate,* 363 Pa. 42, 68 A. 2d 734; *Schleich's Estate,* 286 Pa. 578, 134 A. 442; *Roberts Estate,* 350 Pa. 467, 39 A. 2d 592; *Graham v. Graham's Executors,* 34 Pa. 475.

Periodically every month for ten years decedent paid claimants $3.00 a month for board, lodging and laundry. Regular periodic payments, especially when made, received and accepted for a period of ten years, raise a strong presumption that the payments were made and accepted in full payment and satisfaction of all claims for the services rendered. *Schleich's Estate,* 286 Pa., supra; *Calvert v. Eberly,* 302 Pa. 152, 153 A. 146; *Wise v. Martin,* 232 Pa. 159, 81 A. 184; *Grossman v. Thunder,* 212 Pa. 274, 61 A. 904. In *Schleich's Estate,* 286 Pa., supra, the Court said (page 582): " 'To establish such claim [for wages as housekeeper] by parol evidence requires proof direct and positive . . . . Moreover, appellant is also faced with the proposition that, having received a certain sum of money each month, for services, the presumption would be the payment thus received was in full satisfaction of any demand: [citing cases].' " Furthermore, as with the presumption of payment, " 'This presumption "will gather strength with each succeeding year, and the evidence to overthrow it must of course be correspondingly increased." ' " *Roberts Estate,* 350 Pa. 467, 469, 39 A. 2d 592; *Mooney's Estate,* 328 Pa., supra; *Gilbraith's Estate,* 270 Pa., supra.

Was the evidence produced by claimants so clear, precise and indubitable as to establish their claim and overcome the presumption that periodic monthly payments by decedent to claimants for ten years were made and received in full payment and satisfaction of all claims for the services rendered?

The facts are undisputed. Mrs. Irvine lived with the claimants, Mrs. Tarr and her husband, for the last ten years of her life. The only income she had came from a house which she owned which was rented for $20.00 a month. Out of this rental, decedent paid taxes and repairs and the upkeep of the house, clothed her-

self and paid claimants $3.00 a month for ten years for board, lodging and laundry. Solely from a monetary point of view, $3.00 a month was grossly inadequate. Unfortunately, Mrs. Irvine died intestate and thus failed to provide for the claimants as she morally should have done. Decedent left a personal estate of only $42.00, and the aforesaid house, which was subsequently sold for $4575.00 gross. The balance for distribution was $3265.82, all of which was awarded to Mrs. Tarr and her husband on a quantum meruit claim for board, lodging and laundry. The appellant is a niece and heir at law of decedent whom she rarely if ever saw in the last 15 years of her life.

These facts make crystal clear why every Judge would like to decide this case in favor of the claimants even though a demand for additional compensation was never made by the claimants in Mrs. Irvine's lifetime; and even though after Mrs. Irvine's death Mrs. Tarr admitted to two witnesses that "Auntie didn't owe anything except the funeral bill"; and even though as we shall see, there was no evidence legally sufficient to support the claim.

The majority, unsupported by any prior decision and contrary to the principles, tests and language of all our prior decisions, have sustained this claim. All Judges know but sometimes forget that hardship cases make bad law and create haunting precedents. Because of my conviction that the decision of the majority will breach and undermine the walls which the Courts for over a century have erected and maintained to safeguard dead men's estates, I am impelled to vigorously dissent.

The first question that naturally arises is—why didn't Mrs. Tarr, in Mrs. Irvine's lifetime, object to these small monthly payments, and make a request or demand or obtain a promise or an agreement, written

or oral, for additional compensation? This is the $64 question which the majority cannot answer. The reason adduced by the majority—that it would have been useless to ask for more money since Mrs. Irvine was unable to pay more—is but a partial answer. If Mrs. Tarr was not satisfied, she could have said so and Mrs. Irvine could easily have promised or agreed to pay claimant at her death an additional sum or to leave her her house or a definite legacy. Why didn't Mrs. Tarr protest and ask Mrs. Irvine for more money or for a legacy if she wasn't satisfied with what she was being paid? *The record* discloses the likely reason. Mrs. Tarr's sister as a child, lived with and was supported by the decedent in the latter's home for three years; Mrs. Tarr herself as a child had lived with and was supported by the decedent for an undisclosed period of time; she called the decedent Auntie and in the words of one witness, "she [the decedent] said she practically raised her". Isn't it only natural that Mrs. Tarr should wish to take care of Mrs. Irvine in the last years of her life because she wanted to return the love and affection and the care and support which she and her sister had received from Mrs. Irvine!

The decree of the Court below should be reversed because the claimant and her husband utterly and completely failed to overcome the presumption of payment in full.

How can this long and wisely established presumption—that regular periodic payments were made and accepted in full payment and satisfaction—be overcome? Certainly not by loose or vague or equivocal or ambiguous or indefinite statements: *Winfield v. Beaver Trust Co.*, 229 Pa. 530, 79 A. 138; *Gilbraith's Estate*, 270 Pa. 288, 113 A. 361; *Braden Estate*, 363 Pa. 42, 68 A. 2d 734; or by showing that the payments which had been received and accepted without protest

120

for 10 years are now considered inadequate. Yet, taking claimants' evidence at its best, that is all they produced.* Before discussing the evidence, it may be helpful to analyze the real questions which are involved. If decedent had made no payments at all, claimants would have had to overcome by clear, direct, precise and indubitable evidence the presumption that payments were regularly made in decedent's lifetime. *Mooney's Estate,* 328 Pa., supra; *Braden Estate,* 363 Pa., supra; *Flaccus v. Wood,* 260 Pa. 161, 103 A. 549; *Gilbraith's Estate,* 270 Pa., supra; *Cummiskey's Estate,* 224 Pa. 509, 73 A. 916; Hunter, Pennsylvania Orphans' Court Commonplace Book, Vol. I, p. 297. To overcome such presumption, claimants would only have to prove (by clear, precise and indubitable evidence) (1) that payments had not been made by decedent to claimant in decedent's lifetime, and (2) what the reasonable value of the services was. But to overcome and rebut the presumption of payment in full arising from these regular periodic payments of $3.00 a month, claimants must prove (by clear, precise and indubitable evidence) (1) that *claimants had refused to accept these payments as payments in full, or that decedent had promised or agreed to pay more,* viz., an additional fixed sum or the reasonable value of the services, and (unless a fixed sum was agreed upon) (2) what the reasonable value of the services was. *The record will be searched in vain for such a promise or agreement, or for proof that claimant had refused to accept these periodic payments as payments in full.* Moreover, in view of the receipt

---

* Because of the majority opinion the Courts hereafter will be swamped with claims against decedents' estates where claimant unprotestingly received $75. or $100. a month for board and lodging or for wages but proves that a fair and reasonable sum during said period would have been $10. or $25. or $100. a month higher than that actually received.

by claimants of $3.00 a month for 10 years, with no evidence of protest or a demand for more money, it is clear that it could not even be reasonably implied that the decedent and the claimants had agreed, when the services began or at any other time, that the services should be rendered at their fair and reasonable value—certainly there is no clear, precise and indubitable evidence to prove such an agreement or even to permit such an implication. If these words—clear, direct, positive and convincing or clear, precise and indubitable mean what they say, and if they are to be interpreted the way they have been without deviation or qualification for one hundred years, then these claimants certainly failed to make out a case.

Not only did claimants completely fail to prove any protest or demand by claimants, or any promise or agreement by decedent to pay more, but the Chancellor specifically found and the parties agree that *"there is no evidence in the case as to any agreement, contract or understanding,* in so many words, between decedent and claimants *bearing on reimbursement of claimants for their services"*. This, in my judgment, is an insurmountable barrier to this claim.

If, however, we assume as the majority do that this finding is not conclusive, claimants' only proof is an *equivocal* statement made by the decedent separately to two witnesses in the absence of claimant and eight years after the commencement of these services. This statement was made during the course of a conversation concerning the possible sale of decedent's house and was as follows: ". . . the only income was out of her house which was $20.00 a month . . . and she said that that was the only income she had, and if she sold it, again she paid Agnes and Ed, she wouldn't have anything to come and go on at all." This establishes no protest and demand by claimants and no promise or

agreement by decedent to pay claimants any additional sum of money, definite or indefinte; it is merely an explanation of why she regrettably could not afford to pay the Tarrs more money. Certainly and in any event it is not the clear, direct, positive, precise and indubitable evidence which is required *by all* the countless prior decisions of this Court. Furthermore, even the inference which the claimants draw from this statement of the decedent, is itself rebutted and overcome by the admissions made by the claimant herself after the funeral to two witnesses that "Auntie did not owe anything, only the balance of the funeral bill".

Moreover, even if decedent's equivocal statement, as related by the claimants' two witnesses, stood unchallenged and unrefuted, it would still fall far short of the high standard of proof which this Court has for a century required in claims against a dead man's estate. Cf., inter alia, *Braden Estate*, 363 Pa., supra; *Stafford v. Reed*, 363 Pa., supra; *Roberts Estate*, 350 Pa., supra; *Moore Estate*, 349 Pa. 236, 36 A. 2d 812; *Mooney's Estate*, 329 Pa., supra; *Copeland's Estate*, 313 Pa., supra; *Gilbraith's Estate*, 270 Pa., supra; *Graham v. Graham's Executors*, 34 Pa., supra.

In *Mooney's Estate*, 328 Pa., supra, appellant claimed on a quantum meruit for services rendered decedent as nurse, adviser and companion for a period of 6 years. To overcome the presumption of periodic payments, appellant's niece testified that she knew her aunt was not being paid because she had to give her carfare to go to decedent's house, and further that she heard decedent say: "If I don't get my money and get things straightened up to pay her while I am living, I will certainly leave it to her in my will . . . ." Decedent died possessed of an estate worth at least $60,000., which included numerous marketable securities. The Court held that "The testimony was not nearly suffi-

cient to support the claim. . . . [it] requires some pertinent testimony that is 'clear, precise and indubitable.' "

In *Gilbraith's Estate,* 270 Pa., supra, a claim was presented on a quantum meruit for the value of claimant's services for board and nursing. The witnesses testified that decedent said, inter alia: " 'I did hear [decedent] say . . . that [claimant] would be well paid for her trouble. "I know I am a lot of trouble to Margaret now, but she will get well paid." ' "

Another witness testified: " 'I heard [decedent] tell [claimant] that she was good and kind to her; [decedent] was in bed, and she said to me "I do not know what I would have done if it had not been for [claimant], but I will pay her for her trouble, when I am passed away she will be well paid . . . for what she has done for me." ' "

"Claimant's son testified: 'I heard her more than once say my mother would be well paid' ". The Court said (page 294, 295) : "Whether the evidence submitted by plaintiff is enough to rebut the presumption of payment is primarily a question for the court": . . . "the evidence was insufficient to rebut the presumption of periodic payments" (and was likewise inadequate to uphold a promise of payment before or after death).

*Braden Estate,* 363 Pa., supra, is one of a score of cases which are analogous and controlling. In that case Mr. and Mrs. Roberts, (the latter of whom was a niece of decedent) presented a claim for board, lodging and general care of the decedent under an oral contract by which decedent agreed to pay claimants "whatever was right". No specific sum was agreed upon and they therefore sued on a quantum meruit, alleged an express agreement of employment, and proved that the reasonable value of the services rendered was $10.00

a week. There, as here, the claimants unquestionably furnished the services, but this Court held that those facts plus decedent's declarations were not sufficient to overcome the presumption of payment. Chief Justice MAXEY said (pages 44-46) : ". . . the only testimony . . . to sustain the position of exceptants as to there being an understanding or agreement between Lizzie Braden, the decedent, and [themselves] was that of Erma Long, [a servant] who testified that she heard Lizzie Braden say that: 'just as soon as she got out of there [apparently a "sick bed"] she intended to see that Ida and Jim got paid and paid well for what they had done for her.' " [This was certainly stronger in favor of claimants than the statement made by decedent in the instant case.] ". . . If claims against decedent's estates should be allowed on such testimony, no decedent's estate would be safe from spoliation."

The majority—having no authority to support their decision—vainly attempt to distinguish *Braden Estate* on two grounds: (1) that the relationship between the claimants and the deceased in that case was a blood relationship and (2) *Braden Estate* was not a case of quantum meruit but a suit upon an express contract. A moment's reflection will suffice to convince that a friend is often closer and dearer than a relative, but in the instant case the claimant was more than a friend of the decedent—the decedent had "practically raised her" and although called "Auntie" obviously stood *in loco parentis.*

Although we consider it is immaterial to the disposition of this case, whether or not the claim in *Braden Estate* was based upon a quantum meruit, nevertheless, contrary to the assertion in the majority opinion, *it was a claim upon a quantum meruit* according to the contention of counsel in his paper book in that case, and according to the opinion of the lower

Court in that case, and (impliedly) of this Court. Furthermore, it is clear as Chief Justice MAXEY said in *Lach v. Fleth,* 361 Pa. 340, 348, 64 A. 2d 821; "When one contracts for the services of another and receives and accepts those services, but without specifying what the compensation shall be, a recovery for the value of the services must be by an action of quantum meruit." This has been the law for centuries: see Blackstone's Commentaries, Lewis's Edition, Vol. III, page 1154, sec. 163.* It is obvious therefore that *Braden Estate,* like a score of other decisions of this Court, controls this case and cannot be distinguished.

To allow Mr. and Mrs. Tarr's claim under the loose, equivocal and flimsy evidence presented in this case flies in the teeth of a myriad decisions of this Court and makes meaningless the clear and controlling language of those opinions. Moreover, it will inevitably weaken the safeguards and erode the barriers which for a hundred years the Courts of this Commonwealth have erected and maintained to protect dead men's estates, and will thus open wide the door to countless false or fraudulent or imaginary claims.

Mr. Justice MUSMANNO joins in this dissenting opinion.

---

* Since the majority opinion seems to place such stress on the question of quantum meruit, we may say parenthetically that we believe the appellant does not misconceive when assumpsit on a quantum meruit will lie. It is only where there is (a) an express contract for personal services at a fixed compensation or for a sum certain or (b) a promise to leave a definite legacy, that an action can be brought upon the express contract; and where *such* an express contract exists or is alleged, plaintiff cannot recover upon a quantum meruit; Cf. *Witten v. Stout,* 284 Pa. 410, 131 A. 360; *Conti Co. Inc. v. Donovan,* 358 Pa. 566, 57 A. 2d 872; *Cramer v. McKinney,* 355 Pa. 202, 49 A. 2d 374.