## Ackerman Estate

*Freedman, Landy and Lorry* and *Martin J. Vigder-man,* for accountant.

*Frank J. Jackson* for *Isadore A. Shrager,* for Commonwealth.

*Edward G. Bauer, Jr.,* City Solicitor, and *E. Louis Rosen,* Assistant City Solicitor, for City of Philadelphia.

SHOYER, J., June 19, 1964.—David Ackerman died June 13, 1961, intestate, survived by a spouse, Minnie Ackerman, and two children, Elliott and Rosalie P. Ackerman.

Minnie Ackerman, the surviving spouse, is a patient in the Philadelphia State Hospital, but has no guardian for her estate. Elliott Ackerman, her son, is a patient in the Philadelphia State Hospital, and has no guardian for his estate. By decree dated June 16, 1961, by Bolger, J., as of no. 1652 of 1961, Broad Street Trust Company was appointed guardian of the estate of Rosalie P. Ackerman, a minor daughter, who is now past 19 years of age.

Letters of administration were granted to the accountant by the register of wills on June 19, 1961, and proof of publication of the grant of same is hereto annexed.

The family exemption was not claimed.

The estate is hopelessly insolvent.

The statement of proposed distribution lists the claims by the Commonwealth of Pennsylvania in the sum of $8,659.33 and the claim by the City of Philadelphia in the sum of $4,768.43, as admitted. . . .

The Commonwealth presented a claim as creditor in the revised amount of $6,340.70. Elliott Ackerman, a son of decedent, has been maintained as a patient by the Commonwealth for several years, with only limited payment of the usual hospital charges.

The City of Philadelphia also claimed $5,637 for maintenance of Rosalie Ackerman, decedent's daughter, by the city's Welfare Department.

Rosalie, as above stated, is 19 years of age. She is presently a scholarship student at Temple University and part time employe at Lit Brothers, a department store.

The Commonwealth, in vigorous prosecution of its demand, complains that the administrator released to Rosalie two savings accounts opened by decedent in the name of "David Ackerman, in trust for Rosalie Paula Ackerman (child)". The account in the Philadelphia Saving Fund Society was in the amount of $2,313.69, while that in the North Philadelphia Federal Savings and Loan Association amounted to $35.

At the audit, Rosalie testified that her father had told her of the existence of these two savings accounts and had shown her just where he kept the books in case anything should happen to him. The family had been broken up when decedent's wife became a mental patient, and Rosalie had been placed with foster parents through the Association for Jewish Children and the city's Department of Public Welfare. Her father was a longshoreman who lived in a room and visited with Rosalie every two weeks, generally taking her out to eat or to the movies. He told her when he made deposits and when interest was added to the savings accounts. He made withdrawals for her contact eye lenses and her vacation needs. Whenever Rosalie "had need for extra funds . . . he would then go and make withdrawals on these savings". Her father was killed in an accident. His landlady knew Rosalie, admitted her to

his room, where she picked up the savings books, and Rosalie eventually obtained the proceeds from the savings institutions.

Recognizing that the estate is hopelessly insolvent, the Commonwealth contends that on the authority of Reich's Estate, 146 Misc. 616, 262 N. Y. S. 623 (1933), it would be inequitable to let these tentative, or so-called Totten, trusts become the property of a volunteer at the moment of decedent's death when decedent not only owed the debts in question but also had subject to his absolute control the funds in the savings accounts. "It was [his] duty to apply the latter in solution of the former, and [his] failure so to do would amount to a fraud on [his] creditors": 262 N. Y. S. at p. 627.

The Reich decision is based on the theory that in the case of a Totten trust, the death of the depositor gives rise to a "presumption" of an absolute trust, or a factual inference, "which is subject to rebuttal either by any competent evidence or by a stronger inference". There was no evidence before the New York court in Reich that decedent had taken any steps to make the trust irrevocable prior to death, but the court did note in the record the "strongest conceivable inference" that death did not convert the tentative trust into an irrevocable one. This "inference" was decedent's presumed preference for a decent burial rather than the quicklime of the potter's field. The Reich decision is not pertinent to the present situation inasmuch as Ackerman's burial was paid out of Social Security, and perhaps some damages recovered for his wrongful death.

Here, the testimony of Rosalie is credible and convincing. Her father, by word and deed, clearly expressed his intention that these savings accounts were solely for Rosalie's benefit. In no uncertain terms, Rosalie has advised the court of decedent's intention. His desire to make the trusts irrevocable was expressed to his daughter by "clear and unambiguous language and con-

duct", which fully meets the requirements of Ingels Estate, 372 Pa. 171, 177, and Tunnell's Estate, 325 Pa. 554, 556. The record before me is completely free of any inconsistent and contradictory evidence as to the depositor's intentions, such as influenced the court in Ingels Estate to hold that the trusts remained revocable.

While decedent made some withdrawals for his daughter, it is significant that he never made any withdrawals for his own use: McGary Estate, 355 Pa. 232, 238 (1946). Cf. Bearinger's Estate, 336 Pa. 253, 256 (1939). "It follows that none of the bank accounts were so called 'tentative trusts.' Each was a completed gift or transfer. . . . An immèdiate interest arose in the beneficiaries with the right of immediate possession postponed. Death accelerated nothing except, perhaps, the right of immediate possession in the beneficiaries . . .": McGary Estate, supra, pp. 239, 241.

While McGary involved inheritance tax, the court's holding is applicable to the present situation in the absence of any evidence that these savings accounts were created for the express purpose of defrauding creditors as in Banca d'Italia & Trust Co. v. Giordano, 154 Pa. Superior Ct. 452 (1944).

The legal theory as to savings accounts opened by a depositor "in trust" was clearly stated by our Supreme Court in Scanlon's Estate, 313 Pa. 424 (1933), when Pennsylvania adopted the New York law of Matter of Totten, 179 N. Y. 112, 71 N. E. 748 (1904), and these tentative trust principles have been reiterated and approved many times since, as will be found by referring to the Pennsylvania cases above cited. I quote from Scanlon, page 427:

" 'A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a *tentative trust merely*, recoverable at will, *until the depositor* dies or *completes the gift*

*in his lifetime by some unequivocal act or declaration such as* delivery of the pass book or *notice to the beneficiary.* In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor'." (Italics supplied.)

And in Ingels Estate, supra, p. 176, our Pennsylvania Supreme Court quoted the views of Professor Austin Wakeman Scott with approval:

" 'The first question which arises is one of *intention.* The depositor's intention may be to create an irrevocable trust to arise immediately. He may not intend to create a trust at all. He may intend to create a revocable trust. Evidence is admissible in all cases to show which was the intention of the depositor. The evidence may show that the depositor intended to create an irrevocable trust. Thus, *if he notifies the beneficiary of the trust,* and particularly if he delivers the bankbook to the beneficiary, *or if he makes statements showing his intention to create an irrevocable trust, the trust will* be irrevocable at the outset or *become irrevocable during the lifetime of the depositor. . . .'* " (Italics supplied.)

Pursuant to the above-quoted authorities, I find from the evidence in this record that it was decedent's intention to establish irrevocable trusts in these savings accounts during his lifetime, and they became irrevocable prior to his death. Consequently, the act of the administrator in releasing the savings accounts to Rosalie, the beneficiary, was proper, and these funds are not available for the claims of the Commonwealth or the other creditors. . . .

And now, June 19, 1964, the account is confirmed nisi.